AMERICAN TRIBUNE NEW COLONY COMPANY v.
CHARLES SCHULER ET AL.

Decided February 20, 1904.

**1.—Receiver—Foreign Corporation—Appointment Not Authorized.**

Complainants who were owners of 1-244 part of the stock of a corporation chartered in Indiana for the purpose of purchasing and dealing in lands and town lots in the southwestern part of the United States, applied for the appointment of a receiver, alleging fraud in the organization of the corporation and the management of its business, and a departure from its original purpose; that it had never obtained a permit to do business in Texas, but had acquired lands in Texas the proceeds of which were being misappropriated and for which purchase money was due by the corporation, and which were subject to forfeiture by the State and appropriation by trespassers, etc. Held, insufficient to warrant the appointment of a receiver, as not showing that such appointment was reasonably necessary to the right and legal relief of the complainants.

**2.—Same—Power of Court Over Foreign Corporation.**

The corporation being a foreign one, with charter powers not shown to contravene the laws of this State, the Texas courts are without power to subject to control the corporation itself or its managing directors or any of its property save the lands situated in Texas.

**3.—Same—Legal Remedy.**

Complainants have a legal remedy, though their title in the lands be only an equitable one, by suit for partition of the lands, with sequestration, if desired; or by informing the Attorney-General of the alleged illegal status of the corporation's ownership of the lands, suit may be brought for forfeiture and for sale of the lands and distribution of the proceeds among the stockholders as the statute directs.

**4.—Same—Certifying Questions to Supreme Court.**

The court of Civil Appeals, having before it only the question of whether the action of the district judge in appointing a receiver upon ex parte application was authorized by petitioners' allegations, will not undertake to decide questions incidentally arising and which may be involved on the final hearing and certify them in advance to the Supreme Court.

Appeal from the District Court of Archer. Heard below by Hon. A. H. Carrigan.

*Matlock, Miller & Dycus,* for appellant.

*J. H. Barwise, Jr.,* and *J. T. Montgomery,* for appellees.

CONNER, CHIEF JUSTICE.—This is an appeal from an ex parte order of the judge of the Thirtieth Judicial District appointing a receiver of all the lands and other property of the appellant situated in the State of Texas. The appointment was made upon verified petition in behalf of appellees which may be briefly summarized as follows: That the plaintiffs (appellees) are resident citizens of Archer County, Texas; that the appellant company is a corporation, chartered and "duly organized" under the laws of the State of Indiana "having its domicile" and main office in that State; that P. H. Fitzgerald, Harry A. Fenton and F. N. Fitzgerald are resident citizens of the State of Indiana; that the shares of stock in the defendant corporation are of the par value of $25 each. The plaintiffs then set forth the number of such shares

owned by them respectively, it appearing that the highest number of shares owned by any one of the thirteen plaintiffs is eight, and the lowest number two, and that the whole number owned by all of the plaintiffs is forty-nine. It is further alleged that in the fall of the year 1900, P. H. Fitzgerald conceived the scheme of forming a colony company for the ostensible purpose of buying lands, and to subdivide and distribute the same among subscribers and stockholders, but which scheme was "really for the purpose of procuring money from the subscribers and stockholders, a large part of which money and funds was to be appropriated to the use and purposes of the said P. H. Fitzgerald and his associates, Harry A. Fenton and Frank N. Fitzgerald." That in order to carry out said scheme the parties named, under the name of the American Tribune New Colony Company, advertised a purpose of organizing a new colony to be located in Oklahoma, declaring the plan to be to open books of said company for stock membership, and that when enough subscriptions had been received to organize a committee of stockholders which should be chosen to select and purchase the necessary lands for subdivision and distribution among the stockholders, and that when said lands were acquired a city was to be located and laid out thereon near the center thereof to cover an area of 1000 acres, and to be surveyed and platted into lots and blocks making 8200 lots; that the members of said corporation were to be given the alternate lots and tracts of said land, and the colony company was to retain the other lots and tracts of land for subsequent sale.

It was represented that one share of $25 should entitle each member to either a city lot or land tract as high as forty acres; two shares to an eighty-acre tract of land and one city lot; four shares of stock was to entitle the holder to two eighty-acre tracts adjoining each other and to two city lots; that by the month of March, 1901, 12,000 shares of the stock of said company had been subscribed for and the money paid in by divers persons residing in divers places and scattered all over a large part of the United States, the said P. H. Fitzgerald and his said associates having received from said subscribers the sum of $300,000 in cash. That on or about the 24th day of January, 1901, the said P. H. Fitzgerald and associates, then acting under the name of the American Tribune New Colony Company, offered for sale what was termed "preferred or investment stock" in said company, and offered and did sell large amounts of the so-called preferred or investment stock, the exact amount of which the plaintiffs were unable to state, but which they charge on information and belief to amount to the sum of $500,000, according to its par value, receiving in cash therefor $126,000 or more, and for which they issued certificates of stock of the said par value of $500,000, a part of which it is charged is owned by the said Fitzgerald and associates, who it is alleged intend to recognize said watered stock in the distribution of the assets of said company at its full face value. That at the inception of said corporation it was

34 Civ.—36

represented by the said P. H. Fitzgerald and associates, as promoters, that all members purchasing stock should share in the assets of the corporation equally, and it was charged that the scheme of selling said preferred or investment stock was in direct violation and repudiation of such representations.

It was further alleged that all of the petitioners, save two who own seven shares of the stock, were among the original subscribers for stock in the proposed new, colony, and that said P. H. Fitzgerald and associates in furtherance of their scheme, and for the purpose of preventing and forestalling the stockholders from having any voice in the management of the affairs of the company, or of in any way interfering with their fraudulent schemes, procured the passage of a law by the Legislature of the State of Indiana, authorizing the incorporation of said company, which was passed on March 8, 1901, pursuant to which the charter was applied for and granted by the Secretary of State of Indiana, incorporating the American Tribune New Colony Company, the charter specifying that the corporation was created "for the purpose of buying, holding and selling real estate, collecting rents, etc.—that is to say, in this manner, the company to deal in all kinds of real estate, especially in lands situated in the southwestern part of the United States, and generally to deal in lots and lands wheresoever located and situated," etc. That the incorporators of said company, as disclosed by the said charter, are P. H. Fitzgerald, Harry A. Fenton and Frank N. Fitzgerald, said parties being named therein as the board of directors of, said company, with P. H. Fitzgerald as president and treasurer, and Frank N. Fitzgerald, vice-president, and Harry A. Fenton, secretary; the charter further providing that "the affairs of this association shall be 'managed by a board of directors, which board shall be self-perpetuating; that is to say, in the event of the death or resignation of any of the directors, then the remaining directors shall elect his or their successors, and said board shall consist of three directors at all times." It was further alleged that said American Tribune New Colony Company, on or about the 2d day of January, 1902, "acquired by purchase, and now has the legal title to, some 60,000 acres of land (less a small proportion set apart to stockholders under the original plan of said company) situated in Archer County, Texas, of the aggregate value of $360,000 or more, which said lands were purchased with the corporate funds, and now is the property of said corporation subject to certain liens securing purchase money thereon amounting to about $120,000," a description of which said land is set out in the petition.

That said officers of the company have never complied or attempted to comply with the laws of Texas, requiring a permit from the Secretary of State authorizing the transaction of business in Texas; that said company has sold numerous tracts of lands acquired as stated, and is further offering for sale other of its said lands; that said company has rented some of its lands for crop rent, and is offering to likewise rent

other of its said lands. That the corporation is unlawful in that its peculiar charter provisions are contrary to public policy, and the object sought to be accomplished in direct violation of the statutory laws of Texas, in consequence of which it was charged that the officers of the corporation are powerless to enforce its contracts or to protect the rights of the petitioners; that a part of the lands of the company are unimproved and not in the actual occupancy of the company, and may at any time become occupied by trespassers, and some of which said lands are now in fact unlawfully and wrongfully held and occupied by persons holding adverse to the interests of the stockholders; that on account of its numerous transactions the company is liable at any time to forfeit and lose valuable rights of the petitioners, because of its inability to maintain suit, and that the title to said lands are in jeopardy and subject to cancellation and forfeiture at the instance of the State of Texas. It is further charged that in September, 1901, the said P. H. Fitzgerald and associates, under the name of the American Tribune Colony Company, and of the Fitzgerald Investment Company, had and solicited other subscriptions of stock in another colony scheme known as the Southwestern Colony Company, with the purported object of procuring large tracts of land in the southwestern part of the United States, and to distribute or sell such lands or a part thereof to its members. It is charged upon information and belief that 10,000 shares of $25 each was subscribed for in this new company, but that no lands had ever been purchased by it, but that the directors of the appellant company have in many instances, the exact extent of which the petitioners were unable to state, sold or given in exchange the lands of the appellant company for the shares of stock of said Southwestern Colony Company, thus diverting and unlawfully misapplying the lands of the appellant company to persons not entitled to share in the distribution of the same; that the appellant company and its said officers have now totally abandoned the original purposes and objects of said company, which it is declared can not now be carried out. That the appellant company and its said officers have formed cliques and combinations among certain of the stockholders, pursuant to which some 13,000 acres of the best of the land involved have been apportioned to certain favored stockholders.

It is further charged that while it was originally contemplated that a board of local governors should reside in this State and have charge of the lands and business affairs of the company, that there was in fact no such board, and that all officers of the appellant company and its books were located in the city of Indianapolis, Indiana, and that while petitioners have made earnest and repeated efforts to obtain information touching the business condition of the company, they have been unable to do so or to secure any statement thereof. That the original plan of the colony was to divide the lands of the company into small tracts and sell to actual settlers, thereby creating a thickly populated community and enhancing the value of all lands of the company, pur-

suant to which many of the petitioners had sold their homes in other
States and removed to this State and to the lands in controversy, with
a view of acquiring homes and permanently residing thereon; but that
the officers of the company were acting in disregard of the original
plans, and were selling and offering to sell the lands in large bodies to
be used chiefly for grazing purposes, thereby defeating the purpose and
benefits of the original plan.   That of the $126,000 of purchase money
yet unpaid $90,000 thereof is past due and suit has been instituted
therefor in the District Court of Archer County, with a prayer for
foreclosure of a vendor's lien; that the officers of the appellant company
have received, as is charged upon information and belief, the sum of
$300,000 from the sale of 12,000 shares of the common or locating stock;
$125,000 from the sale of 5000 shares of the investment or preferred
stock; from the sale of lands of said company situated in Archer County,
the sum of $68,000 or more; besides several thousand dollars raised by
borrowing, and that "there is therefore now in the hands of said officers
of said company at least the sum of $234,000, not inclusive of such
amounts as were realized from the loans from members, and the amounts
borrowed on real estate security," against which it is charged the pur-
chase money due as aforesaid is a proper charge, notwithstanding which
said officers refuse to appropriate any part thereof to the payment of
the purchase money indebtedness aforesaid, and refuse to distribute any
part thereof among the stockholders; but on the contrary have con-
verted said funds to their own use and benefit.   It is further alleged
that one William Morgan, who is made a party defendant, and who re-
sides in Archer County, is the agent of the appellant company, engaged
in renting lands and collecting rents and other sums due said company;
that he has and will remit all sums received by him to the officers of
the company at Indianapolis; "that all sums of money heretofore rea-
lized by the said colony company from the sale of lots and lands in said
colony and for rents have been by said company and its officers taken
away and removed from the State of Texas to the State of Indiana,
and that there is now in the State of Texas, and within the jurisdic-
tion of this court, no property belonging to said colony company ex-
cept the lands hereinbefore referred to, and said sums due for rents
upon said lands as hereinbefore alleged."

Thereupon follows the prayer, which is for citation to the defend-
ants; that the plaintiffs have judgment against the corporation and its
said officers and agents, declaring the object and purpose of the corpo-
ration to be impracticable and unlawful in so far as they attempt to
do business in the State of Texas; that its affairs be closed and wound
up; that all of its property be sold, and its choses in action collected
or converted into money, and that the proceeds thereof be applied to
the payment of the just debts of the corporation, and what remains,
if any, to be distributed equitably among the stockholders in proportion
to the amount of stock held by them respectively; that the rights of

such stockholders to the remaining fund be established and fixed by the judgment of this court in proportion to the amount respectively paid by them into said corporation, less such benefits as they may have received therefrom, and for such other and further relief as the plaintiffs may be entitled to in law or equity, and further pray that, for the purpose of carrying out the objects and purposes prayed for, a receiver be appointed to take possession of all lands and property of the corporation; that he may recover from the officers and the agents of the company, and any other and all persons having or holding in their possession any money or property of the corporation, which under the direction of the court he may sell and apply the proceeds, as prayed for, etc.

The counsel for the respective parties to this litigation have exhibited a commendable degree of intelligence and industry in presenting, pro and con, the numerous propositions involved, and we have before us extended briefs and citations of authority, but in the view we have taken of the appellees' petition we are of opinion that we can dispose of the matter briefly.

The power of our courts to appoint a receiver in proper cases has been expressly conferred by statute; but it is uniformly held, we believe, that a court of chancery will not exercise such power save in cases where it is shown that a receivership is reasonably necessary to the right or legal relief of the party applying. And courts of equity are especially reluctant in cases where, as here, the appointment of a receiver is sought upon petition merely, without hearing evidence and without notice to the party whose property it is thus sought to sequester and to burden. Webb v. Allen, 15 Texas Civ. App., 605, 40 S. W. Rep., 342; Kerr on Receivers, p. 147; Beach on Receivers, sec. 151; Smith on Receivers, sec. 374; North American Timber Co. v. Watkins, 109 Fed. Rep., 104; State v. Mining Co., 50 Pac. Rep., 854.

As shown in the petition, we have before us a foreign corporation alleged to have been duly incorporated, for a purpose and with charter powers not shown to contravene the laws of the State of its creation, and of which and of its managing officers complaint is made by stockholders owning about 1-244 part of its stock. It affirmatively appears, that the domicile of the corporation and of its officers is extraterritorial, and that aside from the lands described in the petition, and possibly some sum due as rents, all moneys and other property of the corporation, are also without this State. What power, therefore, have our courts, in any view of the petition, to subject to control either the corporation itself or any of its managing directors, or any of the property involved save the lands described in the petition? In the case of the Texas & Pacific Ry. Co. v. Gay, 86 Texas, 571, 26 S. W. Rep., 603, our Supreme Court had occasion to consider the questions here suggested, and we quote as appropriate the following excerpts from the opinion in that case:

"The direct purpose of all judicial action is relief to a litigant, which

can not be given by a judgment or decree alone, but must be given, if at all, through the enforcement of the one or the other by appropriate process; and the highest test of the jurisdiction of a court in a given case is found in the answer to an inquiry whether it has lawful power thus to enforce its judgment or decree. The rule is thus clearly expressed by the Court of Appeals of Maryland: 'It would be an idle thing in chancery to entertain jurisdiction of a matter not within its reach, and make a decree which it could have no power to enforce or to compel a compliance with. And the absence of that very power is a good test by which to try the question of jurisdiction. It would be a solecism to say that the chancellor has jurisdiction to decree in rem, where the thing against which the decree goes, and is alone the subject of and to be operated upon by it, is beyond the territorial jurisdiction of the chancery court, and not subject to its authority, and the decree, if passed, would itself be nugatory for the want of power of jurisdiction to give it effect.' White v. White, 7 Gill & J., 210. * * * A court can not confer upon a receiver power outside of the territory over which it has jurisdiction, for its process can not be effective beyond that, unless authorized by statute to reach to the territory within the limits of the country to which the court belongs; and, where the process of a court can not go and be entitled to enforcement and respect, its officers can not have power. Northern Ind. Ry. Co. v. Michigan Cent. Ry. Co., 15 How., 242; Ableman v. Booth, 21 How., 524; Toland v. Sprague, 12 Pet., 328; Pennoyer v. Neff, 95 U. S., 714; Harkness v. Hyde, 98 U. S., 476. In Ableman v. Booth it was truly said that 'no judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence.' Whether want of jurisdiction arises from the fact that the thing to be affected by judgment and process of a court is without its territorial jurisdiction, or without its jurisdiction for any other reason, is unimportant, for in either case the process is invalid because the court has not jurisdiction." The conclusion reached after an exhaustive review of authorities was that "the circuit court in Louisiana had not jurisdiction over property in Texas such as conferred upon it power to take possession of and administer it through a receiver or otherwise." '

It must follow that the District Court of Archer County is powerless to enter a decree forfeiting the charter of appellant corporation, or to issue orders in chancery acting upon the person of its officers compelling the production of books, the rendition of statements exhibiting the corporation's financial condition, ordering or restraining the execution of conveyances, compelling restitution of funds fraudulently acquired either before or after incorporation, or in any manner to bring within the court's dominion property of the corporation other than the lands involved. In so concluding we have disregarded the allegations

relating to rents of the Archer County lands because of their uncertain character, it not appearing therefrom that any material part thereof is situated within the court's territorial jurisdiction.

If we are correct in the conclusion reached, we think it must further follow that appellees' petition in its most favorable construction merely presents a case in which appellees show themselves equitably entitled to an interest in and a partition of the lands therein described. To obtain this relief plain legal remedies exist. If, as alleged, the purchase of the lands in question was violative of the spirit of our statute against perpetuities (Rev. Stats., art. 49a), which we need not now determine, and if it be further true that the business of the corporation as developed by the petition is within our statutes requiring foreign corporations to obtain a permit to here engage in business, and that hence the appellant corporation can not in the courts of. this State preserve the lands in controversy from trespassers as against wrongful adverse claimants, appellees may nevertheless freely and lawfully assert and have full protection afforded to their equitable title. Any "evidence of right to land recognized by the laws of this State" is declared by statute (Rev. Stats., art. 5259) to be sufficient title to land to authorize the action of trespass to try title wherein one or more tenants in common may recover the title or possession of lands from those holding without claim of right. And it is further expressly provided that, "Judges and clerks of the district and county courts, and justices of the peace, shall, at the commencement or during the progress of any civil suit, before final judgment, have power to issue writs of sequestration, returnable to their respective courts, in the following cases: * * * When any person sues * * * for a partition of real property, and makes oath that the defendant, or either of them in the event there be more than one defendant, is a nonresident of this State." Rev. Stats., art. 4864. When sequestered, the officer executing the writ while retaining custody of the property is required to care for and manage it in a prudent manner, or should it be replevied by the defendants in the action they are required to give bond with approved security payable to the plaintiffs, conditioned that the defendants (in case of real property) "will not injure the property and will pay the value of the rents of the same in case he shall be condemned so to do." It may be suggested that inasmuch as the statute requires plaintiffs to give bond for a sum of money not less than double the value of the property sought to be sequestered, that the remedy of sequestration is not available to appellees because of the great value of the lands in question. But neither inability to give such bond nor other fact is averred which, so far as we can see, will prevent appellees from the exercise of such remedy. True this will not prevent the alleged threatened sale for purchase money. Neither will the appointment of a receiver in event the corporation or its managing officers fail or refuse

to remove this hazard by payment, and which, as we have seen, our courts are without power to coerce.

But it is alleged that the lands are liable to forfeiture by the State because of their unlawful acquisition. The statute provides that corporations holding lands contrary to the laws against perpetuities, heretofore referred to, shall hold the same subject to forfeiture and escheat proceedings, and in such cases makes it the duty of the Attorney-General, or other attorney appointed by the Governor for that purpose, "when he is informed or has reason to believe" that such unlawful holding exists, to institute the prescribed suit to enforce forfeiture. In such case, however, when condemned, the procedure is to sell the lands as under execution and, after payment of costs, to pay the proceeds into the State treasury, "subject to be paid to the stockholders, or persons entitled to receive the same as owners," etc. Rev. Stats., arts. 749d, 749e. We are unable to see that the State will be deprived of the right of forfeiture, if any exists, by the appointment of a receiver. Indeed, we by no means feel clear that the facts alleged in this particular do not themselves show a legal remedy. Should appellees "inform" the Attorney-General of the condition of the alleged illegal acquisition and holding of the lands in question by the appellant corporation, we can not assume that he will refuse to perform his duty. If so, and the facts alleged are true, the ultimate result in substance must be to give appellees, in one form at least, all the relief within the power of the court to enforce the receivership proceedings.

Much stress is laid upon the allegations to the effect that the purposes of the incorporation have become impossible of fulfillment. This seems true, if at all, in a modified sense only. That is, that the corporation failed to secure the Texas lands at a price that enables it to apportion among its stockholders as many acres per share as originally contemplated, and that its sales of town lots and other subdivisions of lands not taken by shareholders has not been and can not be made as securely, speedily, and at such profit as originally expected. The mere fact that the corporation and its managing officers have failed to realize the promises of promoters, and the bright anticipations of profit by shareholders voluntarily entering into the enterprise will certainly not constitute sufficient reason for the Texas court to attempt, through a receiver, to assume charge of the Texas lands and engage in the doubtful business of retailing lots and small farms, and thus seek to establish a city and populous colony for the supposed benefit of shareholders in a foreign corporation.

We have not considered appellant's verified answer, filed October 6, 1903, for the reason that it was not before the court at the time the receiver was appointed, and no motion to discharge the receiver was made upon the filing thereof. If such answer be considered, however, as we are invited to do by appellees' brief, it would but confirm us in the conclusion we have reached. Among other things, appellees'

allegations of conversion and of conspiracy and of purpose on the part of P. H. Fitzgerald and others to conceal and to defraud, are denied. It is averred that after incorporation a committee appointed by the stockholders authorized the purchase of the lands in controversy in preference to lands in Oklahoma at $62\frac{1}{2}$ cents per acre, as had been originally contemplated; that the Texas lands had been surveyed and every effort made to sell at a profit, but that because of drought, etc., there has been a failure to realize the hopes of those interested; that the certificates of stock on their face are redeemable in lands and lots at values fixed in good faith by appraisers, and that appellees, or most of them, have already partly so redeemed their stock, and at any time may so receive lands in redemption of the remainder. It is also averred in substance that the apportionments made to the alleged pools was but a fair distribution to shareholders jointly seeking to redeem their stock, and that appellees have never been denied a like right. Insolvency is denied; an ability to protect its lands and many other things averred that we will not notice, as this opinion has already been extended beyond what was originally contemplated.

Without further determination of the sufficiency of appellees' petition, we will conclude by saying that in our opinion the judgment appointing a receiver should be reversed, and the receivership vacated. Ordered accordingly.

*Receivership vacated.*

### ON MOTION FOR REHEARING.

A very forceful motion for rehearing has been filed herein, and we are asked in event it be not granted to certify to the Supreme Court for its determination a number of questions which, as we conceive relate to the merits of appellees' cause of action, if any, and which are not involved, except incidentally, in the question really presented on this appeal. The sole question before us was whether the action of the court in appointing a receiver was authorized under the circumstances appearing in our original opinion. We thought not, and yet entertain the same conclusion. We have not overlooked the fact that ordinarily the title to corporate property both legal and equitable is in the corporation, and not in its stockholders, but the remedy of partition was suggested in answer to appellees' contention on the original hearing that they were equitably entitled to the lands in controversy. If so, they have such title as will enable them to have partition as originally stated, and we felt and now feel unwilling to deny such contention, or to say just what effect should be given to the acquisition of and corporate dealings with the lands involved in disobedience of express statute. As suggestive merely, see Empire Mills v. Alston Grocery Co., 4 App. Civ. Cas., 346, 15 S. W. Rep., 505, and authorities therein cited; 4 Thomp. on Corp., secs. 4445-4453. Nor do we

wish to be understood as holding that under the form of the certificates of stock held by appellees, as shown in appellants' answer, relief may not be given, as in cases of the Franco-Texas Land Co. v. Bousselet, 70 Texas, 422; Franco-Texas Land Co. v. Laigle, 59 Texas, 339, or that under proper allegation and proof a Texas court may not, as to the lands involved, wind up the affairs of the appellant corporation and decree an equitable distribution of its assets after payment of debts. We merely hold that a case for the appointment of a receiver was not shown, and are of opinion that we should not, in advance of a hearing, certify the questions suggested, and accordingly overrule the motion for rehearing and to certify.

*Overruled.*