## BUTTS et al. v. DAVIS et al.

(Court of Civil Appeals of Texas. Amarillo. April 6, 1912.)

1. APPEAL AND ERROR (§ 397*)—NOTICE OF APPEAL—STATUTORY PROVISIONS.

Rev. St. 1895, art. 1387, requiring notice of appeal to be given in open court within two days after final judgment, does not apply to appeals from interlocutory orders.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2101; Dec. Dig. § 397.*]

2. APPEAL AND ERROR (§ 78*)—INTERLOCUTORY ORDER—APPOINTMENT OF RECEIVER.

An ex parte order appointing a receiver is an interlocutory order, notwithstanding its making and entry during term time, and not appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 426, 464–483; Dec. Dig. § 78.*]

3. APPEAL AND ERROR (§ 391*)—DISMISSAL OF APPEAL—GROUNDS.

Under Rev. St. 1895, art. 1025, a Court of Civil Appeals has power to permit the filing of a new appeal bond whether the defects in the bond first filed were defects of form or substance; and, when the court has exercised this power, a motion to dismiss on account of such defects will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2077, 2088; Dec. Dig. § 391.*]

4. RECEIVERS (§ 35*)—APPOINTMENT—NOTICE —NECESSITY.

A petition alleged a contract under which the petitioners had subscribed and paid to a trustee a specified sum, in consideration of which the other party was to construct a railroad; that, to the extent of payments by the trustee for materials furnished by the promoter, such material, as well as a lien on property, should belong to the subscribers; that the title was to be vested in the trustee and to be conveyed to the promoter on performance of the contract, otherwise title to revert to the subscribers; that practically all the right of

way had been acquired and a part of the track constructed; that a creditor claimed a lien on the grade; that the promoter had organized the defendant railroad company and had transferred his rights to it; that the company had acquired certain rolling stock on which installments of the price were overdue; that the promoter and the railroad company were insolvent; that the promoter and the company had not constructed the road within the time required and could not complete the construction; that the balance of the amount subscribed was insufficient for this purpose; that the subscribers had demanded delivery of the railroad property, which had been refused; and that by reason of the title to the property being vested in the trustee the promoter and the company were unable to obtain the necessary money to complete the contract. It demanded judgment for possession of the property, or a foreclosure of the contract lien, and also the appointment of a receiver. The petition did not allege that the creditor claiming the lien on the grade was about to take any action which would injure the property or impair the subscribers' rights, nor that the property was being impaired or was in danger of loss or waste. *Held*, that the petition did not justify the ex parte appointment of a receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 54–60; Dec. Dig. § 35.*]

Appeal from District Court, Fisher County; Jno. B. Thomas, Judge.

Action by A. E. Davis and others against W. A. Butts and others. From an order appointing a receiver of the property of the Estacado & Gulf Railroad Company, defendants appeal. Reversed, order vacated, and receiver discharged.

H. A. Turner, of Ft. Worth, Ed C. Hyde, of Kansas City, Mo., and K. R. Craig, of Dallas, for appellants. L. B. Allen, M. A. Hopson, and L. H. McCrea, all of Roby, for appellees.

HALL, J. This cause was appealed to the honorable Court of Civil Appeals for the Second Supreme Judicial District on December 2, 1911, upon authority of the case of Southern Pacific Railway Co. v. Sorey, 142 S. W. 119, and in accordance with the provisions of sections 1 and 4 of House Bill No. 25, passed by the Thirty-Second Legislature, the same was ordered transferred to this court. Prior to the transfer thereof, the case had been submitted, and by an able opinion, rendered by Chief Justice Connor, the judgment of the lower court was reversed, the order appointing the receiver vacated, and the receiver discharged. Since the rendition of that opinion, the same question has been considered and decided by Chief Justice Pleasants, in Security Land Company et al. v. South Texas Development Co. et al., 142 S. W. 1191, in which it is held that, to warrant the appointment of a receiver on an ex parte hearing, the petition must not only state facts sufficient to authorize the appointment, but must further show that there is no other remedy to protect plaintiff, and that there is such pressing necessity for haste in the appointment that plaintiff would probably suffer irreparable

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

loss if the appointment should be delayed until notice to defendant and full hearing, which we quote with approval. Since the opinion by Chief Justice Conner is so exhaustive and clearly decisive of the issue, we adopt it as the opinion of this court, and quote it here in full, as follows:

[1, 2] "This is an appeal from an interlocutory order, entered during term time, of the Honorable John B. Thomas, judge of the Thirty-Ninth judicial district, appointing a receiver of all the property of the Estacado & Gulf Railroad Company situated in Texas. As a preliminary appellees have moved to dismiss the appeal on the ground that notice thereof was not given 'within two days' after the order of appointment had been entered, and because of certain defects in the appeal bond which we think it unnecessary to specify. We are of the opinion upon the motion that the requirement of 'notice of appeal in open court within two days' specified in Revised Statutes, art. 1387, relates to final judgments and not to interlocutory orders, as the order under consideration undoubtedly is notwithstanding its making and entry during term time. See the statute cited, and Farwell v. Babcock [27 Tex. Civ. App. 162], 65 S. W. 509.

[3] "Nor in cases where, as here, an appeal bond has been given and filed, are we without jurisdiction because of the defects therein. We have power, as has already been exercised in this proceeding, to permit the filing of a new bond curing the defects complained of whether such defect consists of form or substance. See Gen. Laws 1905, p. 224; Rev. St. art. 1025; Williams v. Wiley [96 Tex. 148] 71 S. W. 12; Horstman v. Little [98 Tex. 342] 83 S. W. 679. The motion to dismiss the appeal must therefore be overruled.

[4] "The order appointing the receiver was made without notice to appellants upon the verified petition of appellees alleging, among other things, in substance, that the petitioners, and some 150 others for whom they sued, entered into a written contract on the 15th day of February, 1908, to pay W. A. Butts and his assigns the several amounts subscribed by them, aggregating $50,000, and to procure for them the statutory right of way, depot, and terminal ground, in consideration of which Butts agreed to build and put in operation, within 12 months from the date of the contract, a standard gauge steam railroad between the town of Roby in Fisher county, Tex., and some point on the Kansas City, Mexico & Orient Railroad, between the towns of Hamlin and Sweetwater, Tex. The contract was attached to the petition as an exhibit, and by it, for the consideration alleged, Butts 'and his assigns' agreed to 'construct, operate, and maintain a standard gauge steam railroad' between the points above named 'continuing the same in such direction' as Butts and his assigns 'might determine.' For which the subscribers to the fund, designated in the contract as parties of the second part, agreed to pay the several amounts by them subscribed, aggregating not less than $50,000, and to procure the right of way, depot, and terminal ground as alleged. The contract provided that the payments were to be made to a trustee appointed by the contract 'for all parties,' upon the 'written authority of a majority of five' agents or committeemen appointed by the subscribers to the fund. None of the funds paid by the subscribers to the trustee was to be paid out 'until the grade from said town of Roby is completed to the crossing' with the Orient railroad, and then only 'for material furnished and delivered by said party of the first part (Butts and assigns) on the grade of said contemplated railroad.' The contract further provided that 'to the extent of said payment said material shall be, and is here understood to be, and is the property of the parties of the second part, as well as the lien upon all grades, right of way, switch grounds, depot ground, easements and incidents of whatsoever kind belonging to the party of the first part and his assigns.' It was also provided that the 'title' to the right of way, depot, switch, and terminal grounds to be secured by the subscribers to the fund was to be 'vested' in said trustee and 'by him to be conveyed to said party of the first part and his assigns, as soon as said party of the first part and his assigns shall have performed their part' of the contract. The contract further provided that, 'should said party of the first part, and his assigns, fail or refuse to carry out their part of the undertaking herein contemplated, then all work done, right of way secured, or other rights, property, easements, or things of whatsoever kind incident to or belonging to said party of the first part or his assigns, shall revert to and become the property of said party of the second part, from the said town of Roby to the extent of ten miles beyond the crossing of said contemplated railroad on the K. C., M. & O. Railroad, whether owned by said party of the first part, or any trustee or assigns thereof, corporation or otherwise.' There are other provisions of the contract which it is not deemed material to notice.

"It was alleged in appellees' petition: That, pursuant to the terms of the contract from which we have quoted liberally, the plaintiffs in the application had executed and delivered to the trustee named in the contract their respective notes and obligations for their respective sums agreed to be contributed by each and had secured the same in the manner provided in the contract. That said trustee, who was a party defendant in the suit, had, in accordance with the terms of the contract, paid to the defendant Butts approximately the sum of $37,000 for material used in the construction of said railroad and $3,700, which had been used in the purchase of the right of way and other real estate for

the use of the defendant Butts. That soon after the execution of the contract the defendant Butts caused to be organized, under the General Laws of the state of Texas, the defendant Estacado & Gulf Railroad Company, and has assigned to it all of his rights under the contract. 'That the right of way, or substantially all of it, for a distance of 12 miles between the town of McCauley, Tex., on the K. C., M. & O. Railroad and the town of Roby, Tex., has been acquired under the terms of said contract and substantially all of. it vested in the defendant Haderton, trustee. That all of said 12 miles between said points has been graded, but that the defendant W. J. Cox is setting up and claiming a lien on said grade for approximately $4,500. * * * That the rails have been laid on said ground from the town of McCauley in the direction of Roby for a distance of $6^4/_{10}$ miles, and that there are enough ties and other material on hand to lay the same approximately three-fourths of an additional mile.' It was further alleged: That in some instances it had been necessary to condemn the right of way in the name of Estacado & Gulf Railway Company, but that the consideration therefor was paid by said trustee, and that 'in equity and good conscience such right of way is held by the defendant company for the use and benefit of your petitioners and other persons in whose behalf the suit is brought.' That the defendant Butts and the railroad company 'are without sufficient means or credit to finish said railroad into the town of Roby. That the said defendant company has acquired one engine, one passenger car, one flat car, and one caboose, at the cost of about $7,000, and owes on same approximately $6,000, payable in installments which it is unable to meet. That the revenue being derived from the operation of said $6^4/_{10}$ miles of railroad are not sufficient to pay the expenses, and that the said defendant Butts and the railroad, or the railroad itself, has become obligated to other persons, the names and addresses of whom is unknown to your petitioners, in sums sufficient to aggregate a total indebtedness of approximately $15,000, and is therefore insolvent. That the said defendant Butts and the said railroad company have made default in the carrying out of the provisions of said contract, in that it, and each of them, have failed to complete said railroad into the town of Roby, within the period prescribed by the terms of the contract, notwithstanding more than 15 months have elapsed since the expiration of said period in which the same was to be completed, and that under the terms and conditions set out in said contract all of said property has become forfeited, and is the property of your petitioners and the other persons in whose behalf this suit is brought. That the difference between the sums of money already paid by your petitioners and the other persons in whose behalf this suit is brought and the $50,000 that was agreed to be paid to the said defendant Butts for the construction of said railroad into the town of Roby within the prescribed time, was not and is not sufficient by about $30,000 to complete said road into Roby and place same in operation.' It further appears from the petition that certain of the subscribers had contracted with Butts to take certain bonds of the railroad aggregating about $9,000, and that citizens of the town of McCauley, hereinbefore mentioned, situated on the Kansas City, Mexico & Orient Road, had agreed to pay Butts $25,000 as a bonus for the construction of the road mentioned, but that the McCauley subscribers, 'after paying a small amount of said contract, declined to make further payments, upon the theory that the said Butts had breached his contract and was unable to carry into effect the provisions of said contract.'

"The petition does not disclose whether the citizens of Roby who subscribed for the bonds paid for them or not, or, indeed, whether they had ever been issued by the railroad company, save as may be inferred from the quotation from the petition next hereinafter made. The petitioners, however, further alleged: That they had 'demanded of the defendant Butts and the said railroad company the delivery to them, all and singular, the property known as the Estacado & Gulf Railroad Company property, upon the theory that the defendant's right therein had been forfeited under the terms of said contract. That the said defendant Butts and said railroad company had each failed and refused to turn the said property over to your petitioners. That your petitioners are unable without the possession of said property to obtain by loan or otherwise any money thereon to be used in the completion of same. That the said defendant Butts and the said railroad company are in the possession of said property, and are claiming to be the owners thereof, and are unable, by reason of the title thereto being vested under the terms of said contract in the defendant Hadderton, to borrow or otherwise obtain the necessary sum of money in completing said railroad, and are likewise unable, by reason thereof, to bond the same and carry out the provisions of said contract with respect to said bond.' The petition concluded with the following prayer: 'Wherefore your petitioners sue and pray for citation against all of the defendants, in terms of the law and on final hearing for a judgment for the title to and possession of, all and singular said property and in the alternative, in the event the court should be of the opinion that your petitioners have mistaken their remedy and are not entitled to recover said property, under the provisions of said contact, then for the foreclosure of their lien created by said contract on all and singular the property of the defendant railroad company for the full amount

of $38,700, with interest thereon from the 1st day of January, 1910, for costs of suit, and for general relief, and for the immediate appointment of a receiver, without notice, with instructions from the court to take charge of, all and singular, said property and to immediately ascertain the names of all persons interested therein or claiming any lien thereon, and to make them parties to this suit, and to ascertain at once whether or not the necessary money can be obtained on receiver's certificates issued by this honorable court, and secured by a first lien on all and singular the property of said railroad company, to complete and place same in operation, and for such other and further relief, both general and special, as to the court may seem meet and proper, as in duty bound will ever pray.'

"Pretermitting a discussion and determination of the questions of whether the application for the appointment of a receiver presents such a case of insolvency on appellants' part as to bring appellee within the third class of article 1465 of the Revised Statutes, relating to the appointment of receivers, where a corporation 'is insolvent or in imminent danger of insolvency,' and, if so, whether the petition exhibits 'such cause of action' against appellants as renders the remedy available to appellees within that line of decisions which may be illustrated by the case of Farwell v. Babcock [27 Tex. Civ. App. 162] 65 S. W. 509, and Espuela Land & Cattle Company v. Bindle [5 Tex. Civ. App. 18] 23 S. W. 819, we all concur in the conclusion that appellees' petition does not present that clear right, that clear emergency, which will without notice justify the ex parte appointment of a receiver of all the property and rights owned in Texas by the appellant railway corporation. The rule is well settled and has apt expression in 34 Cyc. 117, 118, where it is said: 'It may be stated as a general rule that a receiver should not be appointed ex parte without notice to the parties to be affected thereby, and before they have had an opportunity to be heard in relation to their rights, and even though there are no provisions in the statute requiring notice of the application for the appointment of a receiver. Under the rules of equity, in matters relating to the appointment of receivers, which govern when not inconsistent with the statutes on the subject, such notice should be given.'

"In Webb v. Allen [15 Tex. Civ. App. 605] 40 S. W. 342, Chief Justice Fisher, of the Court of Civil Appeals for the Third District, quotes with approval the following from Mr. Beach, in his work on the subject: 'In whatever manner the relief is sought from the court, it is the well-settled practice that the defendant, whose possession of property is liable to be wrested from him and taken by the court through its receiver, shall have due notice of the application, so that he may be heard, if he desires, in his own defense. This is also in deference to the long-established principles of courts of equity not to encourage ex parte proceedings, except in cases of emergency, and where such proceedings are indispensable to the proper adjudication of the rights of the parties before the court or in cases of irreparable impending injury.' See, also, Kerr on Receivers (2d Ed.) p. 417, and note, where a strong statement of the rule appears.

"In American Tribune New Colony Company v. Schuler [34 Tex. Civ. App. 560] 79 S. W. 370, this court said:, 'The power of our courts to appoint a receiver in proper cases has been expressly conferred by statute. But it is uniformly held, we believe, that a court of chancery will not exercise such power, save in cases where it is shown that a receivership is reasonably necessary to the right or legal relief of the party applying. And courts of equity are especially reluctant in cases where, as here, the appointment of a receiver is sought upon petition merely, without hearing evidence and without notice to the party whose property it is thus sought to sequester and to burden.'

"While it was held in Cotton v. Rand, 92 S. W. 266, by the Court of Civil Appeals for the Fourth District, that an emergency in that case was shown, the court nevertheless recognized the general rule as above stated, in saying: 'There is no provision in our statutes requiring notice of the application, for the appointment of a receiver, but under the rules of equity in matters relating to the appointment of receivers, which govern when not inconsistent with the statute on the subject, it is firmly established that such notice should be given. There are, however, exceptional circumstances under which notice of the application will not be required and an ex parte proceeding allowed. Emergencies arise requiring immediate action, such as to prevent injury to the property or to preserve it from threatened, impending, irreparable loss or damage, or where it is impossible to allow the time requisite to give notice before relief is granted, or where the trustee of the property is a nonresident.'

"In 33 Cyc. 616, it is said: 'Ordinarily a receiver for a railroad should not be appointed upon an ex parte application, and the court will not appoint a receiver without notice to the adverse party and an opportunity to be heard where it is not shown that a manifest and urgent necessity for such immediate appointment exists, or where a temporary injunction will adequately protect the rights of the parties until such notice can be given. Circumstances may arise, however, under which the appointment of a receiver on an ex parte application without notice will be proper; but to justify such an appointment the bill or petition must allege facts showing it to be necessary and it is not sufficient merely to allege that such an emergency exists.'

"The foregoing citation of authorities we

think will be sufficient to make clear the rules of law upon the subject, and which, when applied to the facts set forth in appellees' application, support our conclusion heretofore announced that the ex parte appointment of the receiver in the case before us was not justified. One alleged creditor is named who it is charged is asserting a lien upon the grade of the appellant railway company for the sum of $4,500; but it is not averred that the lien has become fixed, or that the creditor is threatening or about to take any action whatever threatening injury to or loss of the property or that could or would result in an impairment of any right appellees may ultimately establish. It is nowhere alleged that the property of the railway company specified in the petition is being impaired or is in danger of loss or waste, or that any other thing is being done or threatened by appellants which would create any pressing necessity for the immediate appointment of a receiver whereby the entire property may be sold and forever placed beyond the reach of appellants, to prevent which we have already, in the discharge of our duty, been required to issue a temporary restraining order.

"The petition, together with its prayers, indicates that the prime object of the proceedings, perhaps, is to secure an early completion of the 3⁶/₁₀ miles of railway between Roby and the designated point on the Kansas City, Mexico & Orient Railway that appellants have not yet constructed; but, as desirable as this may be, appellants' rights and property should not be forfeited or taken from their control without an opportunity of being heard. They are at least entitled to their 'day in court.'

"We conclude that the judgment should be reversed, the order appointing the receiver vacated, and the receiver discharged."

PRESLER, J., not sitting.