**BYERLY et al. v. CAMEY et al.**

No. 14373.

Court of Civil Appeals of Texas. Fort Worth.

April 24, 1942.

Rehearing Denied May 22, 1942.

J. R. Wilson, of Wichita Falls, for appellants.

Smoot & Smoot, of Wichita Falls, for appellees defendants "A".

James W. Harvey, of Archer City, E. C. De Montel and A. H. Britain, both of Wichita Falls, H. S. Garrett, of Fort Worth, John E. Green, Jr., of Houston, R. E. L. Batts, Paul A. McDermott, Burney Braly, John A. Braly, and G. R. Pate, all of Fort Worth, Carrigan, Hoffman & Carrigan, of Wichita Falls, Don Emery and Rayburn L. Foster, both of Bartles-ville, Okl., E. H. Foster and Sam W. French, both of Amarillo, J. B. Hatchitt, Bullington, Humphrey & Humphrey, Kilgore & Rogers, and Harris & Martin, all of Wichita Falls, Vinson, Elkins, Weems & Francis and Tarlton Morrow, all of Houston, and Harry Mason, of Vernon, for other appellees.

McDONALD, Chief Justice.

This suit was brought to recover title to approximately 40,000 acres of land in Archer County, part of which is oil producing, from some of the defendants, and to partition the land among the plaintiffs and certain other of the defendants, and to recover damages in the amount of $7,-750,000 from certain of the defendants.

The trial court sustained a general demurrer to plaintiffs' petition, and certain special exceptions thereto which are in fact in the nature of general demurrers. Plaintiffs declining to amend, the suit was dismissed, and plaintiffs have appealed.

The following is a general outline of plaintiffs' petition:

From July 1, 1900, to January 1, 1901, the plaintiffs, and the defendants referred to in the petition as "Defendants A", several hundred in number, together with others not parties to the suit, paid to three persons, whom we shall designate as "promoters", approximately $300,000 for the purpose of buying land to be subdivided among such contributors, taking from the promoters a form of receipt which reads as follows:

"The American Tribune's New Colony Company.

"Indianapolis, Ind., ——— 19—.

"Received of ——— the sum of $——— to be applied on the payment of his ——— share— of membership in the organization to form and settle a colony in the territory of the Southwest, as planned and provided for by the American Tribune Co. of Indianapolis, Indiana.

"Received Payment,

———————.

"Rules of the Company.

"1. The location is to be made upon good farming lands.

"2. That no one person can take over four shares.

"3. Shares are $25.00 each.

"4. One share gives you a city lot or a land tract as high as forty acres.

"5. Two shares gives one city lot and a land tract as high as eighty acres.

"6. Four shares gives two city lots and two land tracts of eighty acres each.

"7. One-half paid with the application and the remainder to be paid upon thirty days' notice.

"8. No refundment will be made, as payments are made the money is invested and cannot be withdrawn.

"9. Women may become members the same as men.

"10. Changes from one share to more may be made by paying the additional sum.

"11. If from any cause, Colony should not be made up and located, then all money paid, less the actual expenses will be repaid."

On March 14, 1901, the three promoters obtained a corporate charter in the state of Indiana for a corporation named "The American Tribune New Colony Company". The charter, or articles of incorporation, provided that the capital stock should be $300,000, divided into 12,000 shares of $25 each. It provided that the affairs of the corporation should be managed by a board of directors which should be self-perpetuating, and that upon the death of a director the remaining directors should fill the vacancy. It named the three promoters as directors to "manage the affairs of the corporation for the first year". It provided that the term of existence of the corporation should be fifty years. The purpose clause read as follows: "3rd. This association is organized for the purpose of buying, holding and selling real estate, collections, rents, that is to say in this manner, the company to deal in all kinds of real estate, especially in lands situated in the southwestern part of the United States and generally to deal in lots and lands wheresoever located or situated. It is the purpose and intention of the company to acquire large tracts of land in Oklahoma, to lay off a city thereon, and divide the lots and lands among the stockholders of the company, and sell lands and lots to the public generally."

Subsequent to the date of incorporation the plaintiffs and "Defendants A", together with others, advanced an additional $40,000 to the promoters for the purpose of buying lands for colonization by the contributors and for division among them. Plaintiffs and the "Defendants A" advanced more than $250,000 of the money paid in before incorporation, and more than $30,000 of that paid in later.

Immediately after incorporation of the company, there were issued to those who had paid their money to the promoters, including plaintiffs and "Defendants A", stock certificates in form as follows:

"No.                The                Shares

"American Tribune New Colony Company
"Of Indianapolis, Indiana.
"Capital Stock $300,000.00.

"This certifies that .——— of ——— is entitled to ——— shares of Twenty-five Dollars ($25.00) each of the Capital stock of the American Tribune New Colony Company, transferable only in person, or by attorney, on the books of the company. The object for which this certificate of stock is issued is to entitle the holder thereof to an allotment in the distribution of the lots and land tracts of said corporation, a Mutual Land Colonization Company, a body of people joined together for the purpose of making homes, to purchase a large body of lands, to lay off a city thereon, and to divide the lands and lots as nearly equal as possible, and as applied for by the members, as nearly as can be done. That no deed of said allotment will be made to members without the return and surrender of this Certificate, which is a part of the agreement between the holder and the Colony Company, that the sale of the Certificate carries with it the right to allotments. That the life of the colony is for five years and the Colony Company reserves the right to call in this certificate and make deed whenever the company is in condition to do so, prior to the five years, as provided by the laws of said Colony Organization.

"Witness the Corporate Seal of the American Tribune New Colony Company, and the signatures of the President and Secretary, at Indianapolis, Indiana, this ——— day of ———, 1901.

———————————    ———————————
    Secretary            President."

On or about January 2, 1902, the land sued for, together with some 20,000 acres of other lands in Archer County, was conveyed by general warranty deed from Luke F. Wilson, Nellie M. Wilson, W. E. McCrory, Kate R. McCrory, and M. B. Wilson, to The American Tribune New Colony Company. The petition recites the dates of the several deeds, and recording

references in the Deed Records of Archer County.

The petition alleges that the title to said land, while taken in the name of the corporation, was purchased for and was owned by the contributors under a written agreement made with the promoters prior to the time of organization of the corporation. The written agreement referred to is made a part of the petition, and is the subscription contract with the promoters which is copied above in this opinion.

Most of the lands so purchased were subdivided, some into city lots and blocks, and some into farm tracts, and in such way prepared for division among the colony members.

The petition also alleges the full text of a contract made between the Wilsons and the McCrorys, as sellers, and the corporation, as purchaser, made contemporaneously with the sale of the land, containing terms relating to payment of the purchase price, examination of titles, and pasture rights reserved by L. F. Wilson, the paragraph relating to the latter reading as follows:

"Possession of each and every tract of said land has heretofore been delivered to the said party of the second part, but the said L. F. Wilson shall have the right to allow his cattle to graze upon said land and pasture his cattle and horses thereon until such time as the party of the second part shall actually need said lands for its own use, by the settlers now moving upon same."

The petition alleges that the contract just mentioned "retained for the use and benefit of L. F. Wilson all of said land for grazing purposes until demand for possession of said land was made by members of the colony company; that L. F. Wilson and (the other defendants claiming under him) have since January 2, 1902, had possession of the lands herein described in Paragraph 1 of this petition by reason of their rights under said contract, and have enjoyed the fruits and benefits thereof; that possession has been delivered to the other colony members not herein named, who have received their allotment, and demand is now made for the possession of all of said lands hereinbefore described, of all of the defendants except 'Defendants A' herein named, for and on behalf of Plaintiffs and 'Defendants A'." The only provision of the contract relating to the rights of Wilson to retain possession of the lands is the one copied above in this opinion.

The contract mentioned shows that more than $125,000 of the purchase price of the lands was to be paid by the corporation at a later time, notes being either given or assumed by the corporation for such amounts.

All of the three promoters, named as the original directors of the company, have died, and no other directors have been named to succeed them.

The petition alleges that "the certificate holders of said corporation had no right to select directors and had no right whatsoever except to their interest in the lands purchased with their money and for their use and benefit, and said certificates as held by them was only additional evidence of their interest in the land herein described." 

After the allotment of lands to all the contributors other than those named in the suit, the lands sued for remained for division among plaintiffs and "Defendants A".

The petition alleges that the corporation "was mutual in its nature, and the lands herein described belonged to those who advanced the money for the purchase thereof, and, although stock was issued to those advancing the money, such stock was additional evidence of the right of the holder thereof to a proportionate part of the land".

The petition alleges that the corporation had no permit to do business in Texas, that it was prohibited by law from buying and selling land in this state, and that it "was a mere name in which said lands were taken for the benefit of all of the colony members and that the colony members were the holders of both the legal and equitable title to said land".

The theories upon which the trial court sustained the general demurrer to the petition are reflected by his action in sustaining certain exceptions which are in the nature of general demurrers, or exceptions sui generis. In effect, they are:

(1) That the petition shows that the land was conveyed to the corporation, and that plaintiffs were merely stockholders therein; that the petition does not allege that the corporation is no longer in existence; that it does not show that the stockholders have heretofore surrendered their certificates to the corporation, or that they

have requested and been refused allotments of land; and that the petition shows upon its face that such action upon the part of the stockholders had to be exercised within five years from the issuance of the certificates.

(2) That the petition fails to allege that at the time of filing the suit the corporation was the legal and equitable owner of the lands sued for and that such lands were on hand and unallotted and subject to allotment; that the petition shows upon its face that plaintiffs were stockholders in the corporation, and entitled, at most, to allotments upon timely surrender of their certificates, and then individually, but not jointly, entitled to specific performance as against the corporation; and that the petition fails to show such action by the stockholders within five years.

(3) That the petition shows no right of action as against the defendants, or even as against the corporation, by reason of failure to allege a timely surrender of the certificates and demand for allotment.

(4) That the petition shows no more than the assertion of a one-time equitable right, and not a title, and shows a failure to avail of such right for a period of more than 38 years prior to the filing of the suit; that the petition shows no excuse or reason for the long and unreasonable delay in asserting such rights, and no facts are alleged showing that such rights have ripened into title, either legal or equitable; and that the petition shows upon its face that plaintiffs' claims are barred by the two, four, five, ten and twenty-five year statutes of limitation, and by laches and stale demand, by reason of failure to assert them for more than 38 years.

It is apparent that plaintiffs rely heavily upon certain expressions in the opinion of Chief Justice Conner, of this Court, in the case of American Tribune New Colony Co. v. Schuler, 34 Tex.Civ.App. 560, 79 S.W. 370, 374. In that case a few stockholders brought suit for appointment of a receiver of the lands and other property of this corporation situated in Texas. In holding that the allegations of the petition in that case were not sufficient to warrant a receivership, the Court, speaking through Justice Conner, remarked that the petition, construing it most favorably to plaintiffs, "merely presents a case in which appellees show themselves equitably entitled to an interest in, and a partition of, the lands therein described." Plaintiffs in the case before us appear to seize upon this remark as an adjudication by this Court to the effect that the stockholders have an equitable interest in the lands bought by the corporation of such a nature as will support a suit for partition. We do not so construe the opinion. On motion for rehearing, 79 S.W. 376, the Court said that "the remedy of partition was suggested in answer to appellees' [plaintiffs'] contention on the original hearing that they were equitably entitled to the lands in controversy. If so, they have such title as will enable them to have partition. * * * We merely hold that a case for the appointment of a receiver was not shown * * *." The court simply said that if the petition be considered as asserting that the stockholders had equitable title to the lands, then the legal remedy of partition was available, which would bar them from the equitable remedy of receivership.

■ The dominant purpose of the present suit is obviously to recover title and possession from the defendants other than "Defendants A". This dominant purpose reveals it to be, essentially, not a partition suit, but a suit for title. See 41 Tex.Jur. 561-563; Watson v. Hewitt, 45 Tex. 472; Canon v. Scott, Tex.Civ.App., 217 S.W. 429.

■ Plaintiffs having specially pleaded their title, the facts so pleaded specially, and not the general allegations of ownership, must be looked to in passing upon the general demurrer. Snyder v. Nunn, 66 Tex. 255, 18 S.W. 340; Herndon v. Hayter, Tex.Civ.App., 28 S.W.2d 885, writ refused; Evans v. Moore, Tex.Civ.App., 109 S.W.2d 359; Barnhart v. San Antonio Joint Stock Land Bank, Tex.Civ.App., 124 S.W.2d 207.

■ The mere conclusions of ownership and the like, stated in general terms, do not aid the petition as against the general demurrer. 33 Tex.Jur. 557; Holman v. Criswell, 13 Tex. 38; Campdera v. Reed, Tex.Civ.App., 131 S.W.2d 297, writ refused, and cases therein cited.

The special exceptions, sustained by the trial court, were in effect general demurrers, or exceptions sui generis. For the rule applicable, see the statements in

1110

33 Texas Jurisprudence, at pages 586, 587, 562 and 580.

Plaintiffs are not here seeking to obtain specific performance by the corporation, nor are they seeking to set aside the acts of the promoters in incorporating the colonization scheme and issuing shares of stock in the corporation to the plaintiffs. It is inescapable that they accept the incorporation of the scheme, and rely, at least in part, upon the terms of the stock certificates issued to them. So they must be treated as stockholders in the corporation, with whatever rights and obligations there may be attendant, and subject to the general rules governing the business and affairs of corporations, the relationship of stockholders to their corporations, the nature of ownership represented by shares of stock, and the title to property owned by the corporation, subject only to such modifications of the general rules as may be compelled by the terms of the charter, and the stock certificates issued, and the other circumstances alleged in the petition.

Plaintiffs allege that the legal title was conveyed to the corporation. They do not claim a parol trust for their benefit, as that term is generally understood, nor do they, in our opinion, attempt to aver any facts sufficient to create a constructive trust. Reference is made to our opinion in Elbert v. Waples-Platter Co., 156 S.W.2d 146, writ refused, W.O.M., and authorities there cited. If a trust has been created, it must have been by virtue of the subscription contract with the promoters and the stock certificate issued by the corporation. The scheme having been incorporated, and plaintiffs having accepted the act of incorporation and the issuance of stock to them, their rights are limited to such as they had as stockholders of the corporation, under the charter and the terms of the stock certificate, and under general corporation law. The promoters are not regarded as agents of the corporation later to be formed, nor are their contracts binding upon the corporation, unless made so by charter or statute, or unless assumed by the corporation. 18 C.J.S. Corporations, § 120, p. 522; Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S.W. 795, 40 Am.St.Rep. 837.

Plaintiffs refer us to two cases involving the colonization undertaking of the old Franco Texas Land Co. In each of them, Franco-Texan Land Company v. Laigle, 59 Tex. 339, and Franco-Texan Land Co. v. Bousselet, 70 Tex. 422, 7 S.W. 761, the suit was brought by the stockholder against the corporation to compel specific performance of the obligation to convey land to the stockholder in compliance with the terms of the charter and by-laws of the company, and the terms of the stock certificates. We do not have such a situation before us. Here the plaintiffs do not sue the corporation.

Plaintiffs cite Empire Mills v. Alston Grocery Co., Tex.Civ.App., 15 S.W. 505, 12 L.R.A. 366, apparently upon the theory that the corporation might be treated as a partnership because it did not have a permit to do business in Texas, and because the Texas corporation laws did not permit a corporation to engage in the business of buying and selling land. The case is not applicable. The failure to have the permit to do business in Texas, and the prohibition against engaging in the business of buying and selling land, did not affect the title of the corporation to the land. Only the state could have raised such issue. Under no theory of law could it be held that the failure to have the permit to do business in Texas, and the prohibition against buying and selling land in Texas, would operate to vest the equitable title to the land in question in the stockholders. See Russell v. Texas & P. Ry. Co., 68 Tex. 646, 5 S.W. 686; Schwab Clothing Co. v. Claunch, Tex.Civ.App., 29 S.W. 922; Knowles v. Northern Texas Traction Co., Tex.Civ.App., 121 S.W. 232, writ of error dismissed; Atlas Petroleum Corporation v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 5 S.W.2d 215, writ refused; Lee v. W. D. Hayden Co., Tex.Civ. App., 48 S.W.2d 476.

Under elemental corporation law, the title to the corporation's property is in the corporation, and not in the stockholders. The stockholder is in no sense the legal owner of the property of the corporation. The stockholder has a right to his share of the profits while the corporation is a going concern, and to a share of the proceeds of its assets, when sold for distribution in case of its dissolution and winding up. Even then, the rights of creditors are superior to those of the stockholders. See 18 C.J.S., Corporations, §§ 477, 512, pages 1147 and 1189; Automobile Mortgage Co. v. Ayub, Tex.Com.App., 266 S.W. 134; Moroney v. Moroney, Tex.Com.App., 286 S.W. 167; McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171. In the present case the

corporation is not made a party, it is not alleged that the corporation is no longer in existence, it is not alleged whether the corporation has conveyed the lands in question under the power given it in the charter to buy, hold and sell real estate, to deal in all kinds of real estate, and to sell lands and lots to the public generally, and no showing is made with reference to whether there are debts of the corporation which would give creditors rights superior to those of the stockholders. The petition does show that the corporation owed more than $125,000 on the purchase price of the lands at the time they were conveyed to the corporation, and it is not alleged that this was paid.

■ Although plaintiffs say in their brief that their petition alleges that the corporation is no longer in existence, we do not find such an allegation, either as a conclusion, or of facts sufficient in law to show that it has ceased to exist. The provision giving the directors the right to perpetuate themselves in office, and the failure on their part to select successors, could not alone operate to dissolve the corporation upon their deaths. It is not necessary for us to determine whether such a provision in a charter would be valid. Whether valid or not, no court would declare the corporation out of existence simply because it found itself without directors. We are inclined to believe that under general principles of corporation law the stockholders in such a case would have the inherent power to elect new directors. If this conclusion be wrong, then certainly a proper court could bring about the selection of new directors, as may be done in certain cases where a trust estate finds itself without a trustee.

Plaintiffs also cite the case of Duncanson v. Howell, Tex.Com.App., 222 S.W. 232. The case does not involve a corporation, and is not in point on the question of the rights of stockholders in land owned by a corporation.

■ The fact that the stockholders' money, or, rather, the money which the stockholders had paid into the corporation, was used to purchase the land is not enough to create a trust, or to vest the legal or equitable title to the land in the stockholders.

■ We do not consider that plaintiffs' case is aided by the terms of the contract made between the sellers of the land and the corporation. There were several of the vendors. The contract recites that they have theretofore delivered possession of all of the land to the corporation, but that L. F. Wilson, one of the vendors, is to have the right to pasture his cattle and horses on the land until the corporation shall actually need it for its own use. We find nothing in this provision amounting to an agreement of the parties that Wilson should hold possession of the land until demand should be made upon him by the colonists. His agreement was with the corporation, not with the stockholders. We find nothing more in the provision in question than the grant of a privilege to L. F. Wilson to use the land as a pasture until the corporation should desire that he cease to do so.

The language of the subscription contract with the promoters and the stock certificate is not altogether clear. We are not certain that we are able to give any definite interpretation to the recitals to the effect that the life of the colony is to be five years. The by-laws, reference to which is made in the stock certificate, are not set out in the petition, so we do not know what they provided. The defendants contend that the effect of such five year provision was to require any stockholder to surrender his certificate and demand allotment of land within five years, or else lose his right to do so, and thereafter be merely a stockholder in the corporation. We are not inclined to consider it necessary to pass upon this contention, in view of our other holdings.

■ Plaintiffs have not shown any title, legal or equitable, to the land in question. The most that they have shown is a right to an allotment from the corporation, if properly and timely asserted. But a right of this nature is not a present title or interest in land, legal or equitable, such as will support a suit for title, especially against parties other than the corporation. Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Hanrick v. Gurley, 93 Tex. 458, 54 S.W. 347, 55 S.W. 119, 56 S.W. 330; Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066.

Defendants also urge that the petition shows on its face that it is subject to the defenses of laches, stale demand, and the statutes of limitation. In view of the holdings already announced, it is unnecessary to pass upon these contentions.

The judgment of the trial court is affirmed.