## H. McB. PRIDGEN, ADM'R, v. G. B. ADKINS.

Where the evidence presented, as disclosed by the record, in support of the petition or answer, is not sufficient to make it clear to this court what are the real merits of the controversy between the parties, and from the whole transcript it seems not improbable that both the law and the justice of the case have been attained by the judgment of the District Court, this court can not do otherwise than affirm the judgment of the court below.

A sheriff's sale of land under execution, where it is in all respects fair, can not be invalidated because the property sold for less than its value.

Although an agent empowered to sell may purchase in violation of his duty to his principal, the purchase by the agent is not absolutely void, but may

be effectual and valid, either by the express ratification of the principal with a knowledge of all the facts, or by the principal's acquiescence for a great length of time, with a like knowledge of the facts.

The general principle that an agent to sell cannot buy for himself must be understood to mean, that an agent, authorized to sell the property of his principal, cannot become the purchaser of it through the instrumentality of his agency, either directly or indirectly. See this case for the exemplification of the foregoing principle.

APPEAL from Harrison. Tried below before the Hon. C. A. Frazer.

This was a suit brought by the appellant as administrator of the estate of Wiley W. Pridgen, deceased, against the appellee for the recovery of a tract of land purchased at sheriff's sale to satisfy an execution against said Wiley W. The petition was in the nature of a bill in equity, setting forth the facts, and praying that defendant be decreed to reconvey said land to the plaintiff as administrator aforesaid.

The action was based substantially upon the following allegations, to wit: that said Wiley W. in March, 1854, residing in Harrison county, being about to remove several hundred miles to the western part of the State, appointed the appellee his agent, with authority to collect for him a certain note for the sum of nineteen hundred dollars, on one L. P. Alford, of said county, alleged to be solvent, and also to sell and dispose of a certain tract of land belonging to him in said county, consisting of six hundred and forty acres, then worth three thousand two hundred dollars, and at the date of the institution of the suit on the 13th day of February, 1858, worth four thousand dollars; which agency was by Adkins accepted, and to whom was then delivered the note for the purpose aforesaid. That afterwards, in the month of June, 1854, whilst said Wiley was absent, and residing at his new home in western Texas, an execution was issued to satisfy a judgment which had been rendered against him in the Supreme Court, in the case of Hill, McLean & Co. against himself. That said Adkins still acting as such agent, by persuasions, prevailed upon the sheriff to levy upon said tract of land for the fraudulent purpose of causing it to be offered at public sale, in order that he might buy the same for his own benefit at a price below its value; and in accord-

ance therewith, the land was levied on, offered at public sale, and purchased by Adkins for the sum of nine hundred and sixty dollars. That said Wiley W. was then well known to be solvent and able to pay his debts without forced sale of his property; that the defendant did not notify said Wiley W. of any of the proceedings had by virtue of said execution, nor had said Wiley W. any other notice thereof.

The petition also alleged a tender by the plaintiff to the defendant in January, 1858, of the amount of the purchase money with interest, and a demand for the reconveyance to him of the land.

The defendant pleaded the general issue, and specially answered that on the 30th day of August, 1853, he, with one W. T. Scott, signed an appeal bond given by Wiley W. Pridgen, for an appeal to the Supreme Court from a judgment rendered in the District Court of Harrison county, for the sum of twelve hundred and twenty-nine dollars and fifty-six cents, in favor of Hill, McLean & Co. That on the 16th day of May, 1854, the judgment was affirmed by the Supreme Court against principal and sureties on the bond; whereupon, an execution issued, on the mandate from the Supreme Court, from the District Court, on the 5th day of June, 1854, against said principal and sureties. That subsequent to the taking of the appeal, Wiley W. Pridgen removed from Harrison to Gonzales county, distant about four hundred miles; while on his way, he called on defendant and deposited with him a promissory note on one L. P. Alford, of Harrison county, payable to said Wiley W., or bearer, for about nineteen hundred dollars, due about the 1st of January, 1855, remarking to defendant, that if he should become liable on said appeal bond, as security, he could make himself safe with the note. That upon the issuance of the execution, the sheriff (said Wiley W. being absent,) called on defendant to satisfy said execution. That defendant forthwith proceeded with said note to said Alford, requesting him to advance a sufficient sum on his indebtedness to pay the judgment; which request was refused, protesting against the justness of the note, and alleging fraud on the part of said Wiley W. in procuring the same. That defendant then told Alford he would deliver the note to the sheriff to be sold in satisfaction of the execution; at which

Pridgen v. Adkins.

Alford expressed a wish that he would do so, as thereby he would be enabled to purchase the same at a depreciated price; and that defendant believed such would have resulted from the sale thereof. That the sheriff becoming importunate, the defendant pointed out the six hundred and forty acres of land mentioned in the petition as the property of said Wiley W., to be levied on and sold in satisfaction of said execution. That the levy was made on the 15th day of June, 1854, and the sale took place on the 4th day of July, 1854, at public outcry to the highest bidder.

That defendant being anxious to benefit said principal, (in the bond) Pridgen, and to secure himself against loss, he attended the sale, and under full and fair competition bought the said land at the price of one dollar and fifty cents per acre, taking the sheriff's deed therefor, on payment of the amount of his said bid. That the proceeds of the sale, duly applied to the execution, left due and unsatisfied thereof, five hundred dollars, which amount defendant was compelled to pay as such surety out of his own money. That immediately after the sale, he informed said Wiley W., by letter, of said purchase; that said Pridgen died about the middle of October, 1854, and defendant is informed and believes that up to his death he fully acquiesced in said sale. That subsequent to the death of said Wiley W., his surviving wife and then administratrix of his estate recognized and affirmed said sale, and refunded to defendant the balance on said execution which he had paid as aforesaid. That the plaintiff had full notice of all the matters of defence herein pleaded when he instituted this suit, yet he maliciously, and with intent to vex and harrass the defendant, and cause him the unavoidable expense of employing counsel, brought this action; and therefore prays for a judgment for damages against the plaintiff, and a decree removing the cloud upon his title to said land, by reason of the institution of this suit.

The facts proved on the trial, so far as they need be stated, are as follows: Robert Newton testified, that Wiley W. Pridgen removed from Harrison county to Gonzales county, in February, 1854; that on the morning of his departure, witness went with him to Adkins' house, where Pridgen "left with said Adkins said Alford note, to indemnify him and W. T. Scott as his sureties on

his bond in taking a judgment [to the Supreme Court?—Reporter] rendered in Harrison county against said Pridgen."

Witness did not know how they were sureties, or the style of the judgment, but saw Pridgen give the note to Adkins "as a kind of collateral security against the judgment that Pridgen had taken to the Supreme Court, provided Adkins had it to pay." Witness said "the land was mentioned in the conversation; I scarcely recollect in what way, but my understanding from the conversation between them was that Adkins was to look after Pridgen's affairs in Harrison county. I cannot say that I heard any thing like agent or agency mentioned, but I understood from them that Adkins was to act as such for Pridgen during his absence, and in talking of the affairs in that county, the land was in some way alluded to." In reply to the question whether Adkins accepted the agency, and what he undertook to do for Pridgen, he answered that "it seemed to be agreeable to both parties, and Adkins received the note from Pridgen as stated." Another interrogatory required him to state every thing he knew in relation to any property left by Pridgen in Harrison county when he removed, for what purpose and in whose charge it was left, and whether any person undertook the charge thereof, and all that such agent agreed to do in the premises. To which he answered that "Pridgen left the land and Alford note, and I saw him receive the note as indemnity should he have to pay a judgment as security for Pridgen, all of which I have in my preceding answers fully explained to the best of my knowledge."

The tender by plaintiff to defendant of the amount paid by defendant for the land with interest was proved to have been made in the early part of the year 1858; that defendant refused to accept the same, saying that he was the highest bidder at the sale and had bought the land; had previously called on Alford to advance a sufficient amount on his note, (for the amount and due as before stated,) but that he refused, declaring his determination not to pay until Pridgen had "cleared the title" to the land for which the note was given. It was proved that Adkins said that Pridgen (under the circumstances of leaving, heretofore stated,) placed the Alford note in his hands, and had left the land with

him to sell for him; that he had offered it for sale to several persons without success.

It was proved also that shortly after the sale, Adkins told the witness if Pridgen would, within a certain time, (the time limited not remembered by witness,) pay him the amount he had paid for the land, with interest, he would reconvey the same to said Pridgen.

L. P. Alford testified that Adkins had called upon him to pay an advance on the note before its maturity, but he refused so to do, alleging the grounds therefor heretofore stated; that Adkins threatened to sell the note; witness replied that he wished he would; could then buy it at a discount; the note has since been paid by him.

The averments in the petition as to the chain of title by which Wiley W. Pridgen claimed to own the land, need not be stated. There appears to have been no controversy as to his original title, though a bond for title, dated January 1st, 1851, from the defendant, showing a purchase thereof from him, appears in evidence.

The foregoing embraces a full statement of the pleadings and facts proved, as disclosed by the record.

The court charged the jury, if they believed from the testimony that the defendant, as alleged in the petition, was the agent of the plaintiff's intestate, and that he caused and procured the land in controversy to be sold, with a view to become the purchaser thereof under the execution mentioned in the petition; or if the same was liable to be sold in any event under said execution, and the defendant urged on the sale with a view to become the purchaser of the same at a reduced price, and by means thereof did purchase the same at a reduced price, they should find for the plaintiff the land in controversy. But if the defendant was liable as surety on said execution for the payment thereof, the defendant had the right to point out said land to be levied on and sold, unless the said W. W. Pridgen had furnished the defendant with available means to pay the same, or which could have been made available by the defendant, by the use of proper diligence for that purpose. The court also required the jury, by the charge,

to find whether the plaintiff ever tendered to the defendant the money paid by him, when, &c.

The jury found a verdict for the defendant, and a judgment was rendered thereon accordingly.

*W. H. Bristow*, for the appellant.

*Hill & Hill*, for the appellee.

BELL, J.—The parties in this case have not taken the pains to present sufficient evidence either in support of the petition or answer, to make it clear to this court what are the real merits of the controversy between them. The evidence on the subject of the agency of the appellee, and the precise nature and extent of it, is extremely shadowy and unsatisfactory. On the other hand, while we are informed that Adkins was surety for Wiley W. Pridgen on an appeal bond in some suit which was removed to this court, we are not told in the statement of facts what suit it was; and we are left entirely ignorant of the circumstances under which Adkins became the purchaser of the land described in the plaintiff's petition. We are informed that he purchased at sheriff's sale, but the statement of facts does not inform us who were the parties to the execution for the satisfaction of which the land was sold. The pleadings, the statement of facts, and the charge of the court all taken together, render it probable that the land was sold in satisfaction of the judgment to which Adkins was a party as the surety of Pridgen. But we are required to decide concerning very important rights, upon a record which gives us no certain information.

The general principle that an agent to sell cannot buy for himself, is well established. But this must be understood to mean that an agent, authorized to sell the property of his principal, cannot become the purchaser of it through the instrumentality of his agency, either directly or indirectly. If the appellee Adkins was the surety of Pridgen in the judgment for the satisfaction of which the land was sold, then the levy of the execution, and the sale by the sheriff would virtually determine the agency of Adkins

respecting the land, and Adkins would have a right to bid for the land at the sheriff's sale for his own protection as surety. There is no evidence to sustain the allegation of the petition that Adkins pointed out the land to the sheriff, and urged the sale of it. If he was Pridgen's surety in the judgment, he had a right to point out the land to be sold for the satisfaction of the judgment in which Pridgen was the principal debtor. From the pleadings and from the statement of facts taken together, we can infer that the land was purchased by Adkins for less than its value, but if the sale was a fair one in all respects, (and nothing to the contrary is shown,) and if Adkins had the right to bid, then the sale cannot be invalidated because the land sold for less than its value. It is a well established principle of the law of agency, as well as a dictate of common sense, that although the agent empowered to sell may purchase in violation of his duty to his principal, the purchase by the agent is not absolutely void, but may be effectual and valid, either by the express ratification of the principal, with a knowledge of all the facts, or by the principal's acquiescence for a great length of time, with a like knowledge of the facts. We do not propose to discuss the applicability of this principle to the case before us; but it is not unworthy of remark that the sale complained of and the purchase by Adkins are alleged in the petition to have taken place on the 4th day of July, 1854, and that this suit was instituted on the 13th of February, 1858, so that it is not improbable that both the law and the justice of the case have been attained by the judgment of the District Court. As the case is presented to us we cannot do otherwise than affirm the judgment of the court below. It is therefore ordered accordingly.

Judgment affirmed.