LEDESMA ET AL., RESPONDENTS, *v.* AGRAIT ET AL., APPELLANTS.

APPEAL from the District Court of San Juan, Section 1.

No. 851.—Decided May 26, 1913.

POWER OF ATTORNEY—SALE IN DOUBLE CHARACTER OF AGENT FOR VENDOR AND VENDEE—RATIFICATION OF ACTS OF ATTORNEY IN FACT.—In the year 1892 Silvestre Iglesias as attorney in fact of Salvador Ledesma, the ancestor of the plaintiffs, and as attorney in fact of his own wife, executed a deed of sale conveying to his wife his principal's interest in a certain house. The whole of said house had been acquired by the wife of Iglesias, but one-third

thereof was transferred to Ledesma according to agreement because he contributed one-third of the purchase price. After the sale Ledesma wrote to Iglesias approving the transaction and expressing his satisfaction at the acquisition of the property by the latter's wife. Iglesias represented Ledesma in other matters as well and their personal and business relations were intimate. The sale was attacked as void, because, in accordance with section 1362 of the Revised Civil Code, which is the same as section 1459 of the Spanish Civil Code in force when the sale was made, an agent could not acquire property from his principal. The court held:

1. The fact itself that in executing the deed of sale Iglesias appeared as the agent of both the vendor and the vendee is a subsidiary matter, the important question being whether he, as agent of the vendee, purchased for himself.

2. Even granting that it was proven that the money with which the wife of Iglesias acquired the said interest was not her private money, but was earned by the husband during the marriage, which is not alleged in the complaint, said fact would show that the property was acquired in the name of the wife for the conjugal partnership and not for the husband individually. A failure by Iglesias to disclose to his principal the origin of the purchase money does not constitute a material concealment which would vitiate the ratification of the contract by the principal.

3. The principal ratified said sale with a full knowledge of all the essential elements of the contract and by virtue of said ratification the sale was confirmed, the contract being one capable of ratification.

4. In order to determine whether any of the contracts forbidden by section 1362 of the Revised Civil Code are capable of ratification the special nature of each case should be considered, for they are not all governed by the same principle, the modern tendency being to put such a construction upon these contracts as favors the liberty of alienation.

5. The Civil Code makes no distinction between void and voidable contracts, therefore, if a contract has all the elements required by section 1228, according to section 1277 it may be ratified unless it partakes of one of the vices mentioned in section 1242.

6. The judgment of the Supreme Court of Spain of April 11, 1894, is not applicable to the present case, because the true basis of that opinion was that prescription had run and the question of voidable *vel non* was not raised.

7. Sales between joint owners are encouraged by law and the fact that the wife of Iglesias was a joint owner of the house with Ledesma is a circumstance in favor of the possibility of the ratification.

The facts are stated in the opinion.

Mr. *Juan de Guzmán Benítez* for, appellants.

Messrs. *Eugenio Benítez Castaño* and *Francisco Socorro* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of San Juan rendered a judgment in favor of the complainants in a suit entitled in reivindication.

The complainants are the testamentary heirs of Salvador Ledesma Nutó, who died at Málaga, Spain, on February 28, 1904. The defendant, Silvestre Iglesias y Font, was, until February 28, 1904, the local agent or administrator of the property of Salvador Ledesma Nutó, and among such property was an undivided one-third interest in a house and land on Luna Street of this city.

On January 2, 1892, Ledesma y Nutó executed a power of attorney to Iglesias y Font whereby, among other things, the latter was authorized to sell such interest to anyone whom he deemed convenient for the most advantageous price obtainable. By virtue of this power of attorney the said Silvestre Iglesias appeared before a notary on January 23, 1892, and executed a deed of such undivided interest to his own wife, and at the execution of this instrument the said Iglesias appeared not only as the agent of the vendor, but also of his wife, the purchaser, by reason of a power of attorney from her. The deed also recited that the purchase money was her private property and obtained from her father.

It is not very material to the decision of this case that he also gave his consent as husband to the acceptance of the deed by his wife. That only one person appeared for all the parties in the deed is a subsidiary matter, the important question being whether an agent may purchase for himself or his wife, as the case may be, a property or interest therein entrusted to him for sale, the appellees asserting that such a sale is utterly null and void, without any legal validity and that such a sale as here took place is incapable of being ratified. The appellants contend that a sale under the circumstances alleged is *prima facie* voidable, but they place their main reliance on the acts of Ledesma Nutó, by which they maintain the sale to the appellants or either of them was confirmed or ratified. They also maintain that the action, being one for the nullity of a contract, has prescribed.

The appellees have thrown into doubt the question whether the sale under discussion was really made to the wife. They

insist that the money paid for the acquisition of the one-third interest was not the separate property of the wife, as recited in the deed, but was earned by the husband after the marriage and hence that the conveyance was really to him.

Leaving aside the question of whether it was successfully shown at the trial to whom the purchase money really belonged, we think, if that question is important, that the appellees were bound by their complaint. Therein, in this regard, there was nothing more alleged than a description of the deed of January 23, 1892, and that Silvestre Iglesias appeared in that deed in the triple capacity of agent of the seller, agent of the purchaser, and husband. The intendment of the complaint is that the wife was the purchaser. The complainants by the complaint gave the defendants no notice that they proposed to prove that the money recited as the price in the deed belonged to the husband or to the matrimonial society. We agree, moreover, with the appellants that the proof adduced tending merely to show that the property was acquired during the marriage would only show a sale to such society and not a sale to the husband.

It is a general principle of law that before the principal can be said to have ratified an unauthorized act of his agent all material facts must have been disclosed to him. The civil law and the American law do not differ on this point. It follows from the necessity for the consent of the contracting parties. The principal cannot be said to have consented if he approves the act of his agent to the latter under a misrepresentation. He is not estopped to deny an unauthorized sale by reason of a letter written by him to the agent approving the sale, if the agent has in the first place withheld a material fact from the principal. But the undisclosed matters must be material. The fact, therefore, that the purchase money in question was perhaps not the separate property of the wife could not be considered a material concealment. To Ledesma Nutó it could make no possible difference where the purchase money emanated, or that the interest acquired

belonged rather to the society than to the wife. This was a matter between the conjugal partners, or perhaps later between one of them and the heirs of the other. Ledesma Nutó could not ask for the nullity of the alleged contract on the ground of the alleged false recital in the deed as to the origin of the purchase money. Hence, if the alleged sale was one that was capable of ratification or confirmation, it needed no such ratification in this regard. We may add in passing, that we do not consider it necessary to decide whether it was satisfactorily proved that the purchase price did or did not proceed from the separate property of the wife.

We next come to consider, supposing that the sale was capable of ratification, whether such ratification took place. On this point the record and the opinion of the court below leave very little doubt. The facts were substantially as follows: Iglesias was not only the agent of Ledesma for the purpose of selling the one-third interest in the house on Luna Street, but he represented him in other matters as well. Iglesias and his wife had intimate business and personal relations of long standing with Ledesma. The said house on Luna Street was originally purchased in 1880 in the name of the wife of Iglesias, but one-third of the purchase price was contributed by Ledesma, and the one-third interest in said property was conveyed to him by the matrimonial pair. So that at the time of the alleged void sale, according to the records and the apparent understanding of the parties, Ledesma had a one-third interest and Mrs. Irene Agrait y Font de Iglesias had a two-thirds interest in the same property. There was uncontradicted proof on the part of the defendants that Ledesma had agreed to give Mrs. Iglesias opportunity to purchase the one-third interest at the same price he would sell to anyone else, and this proof is substantiated by the letter from him after the sale, which letter we shall transcribe further on; there were indications in the correspondence tending to show, besides the testimony of Iglesias, that before the date of the sale negotiations were pending

to sell the entire house to a Mr. Pinzuela for $9,000, but that the negotiations failed because Iglesias would not lower the price. Then the deed of January 23, 1892, was made. Thereafter the following letter, dated March 8, 1892, was written by Ledesma to Iglesias:

"Your esteemed letter of the 15th ultimo is before me, and I have taken note of its contents. I take notice of the objection that the purchaser made at the time of effecting the sale of the house situated at No. 52 Luna Street, for which reason you refused to make him any allowance on the price; and in regard to the sale which you made to your wife of my one-third share, amounting to $3,000, which was the same amount that was offered you by said gentleman, I shall be glad if you retain the house in your possession for many years, as it is always better to be in receipt of a rental, which, though small, is sure, than to keep money idle without investment.

"I have examined the current account you enclose showing a balance in my favor up to the 10th ultimo of $2,587, which I find entirely satisfactory. In payment of the aforesaid amount I have withdrawn from the said letter a draft in my favor of £228 on the Bank of *Emisión y Descuento* (Issuance and Discount) for account of Fred Hortz, of London, 8 d/s., and another to my order on Paris for F5,613.50 for account of Andre Neuflize & Co., which, at the respective exchange rates of $5.95 per £ (*sic*) and 18½% F., totals the aforesaid sum of $2,587, balance due me as before stated, as per the account you sent me on the before-mentioned date, which is now fully discharged.

"I am glad that you have thought of the purchase of the one-third interest in the house, as notwithstanding that this will represent a considerable loss to me, it will enable you to become more independent in this regard, and at the same time permit me to fulfil my promise to you. In other respects I think you are making a good investment without any risks."

The record shows clearly that the sum of $2,587 to which the letter refers was a balance of accounts between Ledesma and Iglesias in which the $3,000, purchase price of the one-third interest, was charged against Iglesias. This $3,000 was exactly one-third of the price which the owners hoped to get from Mr. Pinzuela for the sale of the entire house. The dol-

lars ($) in the record refer to Spanish *pesos*. From these facts we do not doubt that Ledesma had all the material knowledge that was in the possession of his agent and that he ratified the sale if such ratification, considering the prohibited nature of the transaction, was in his power. This we take it was likewise the opinion of the court below. The prohibition to which we refer is contained in section 1362 of the Civil Code and is substantially the same as article 1459 of the Spanish Civil Code. We transcribe it:

"Section 1362. The following persons cannot acquire by purchase, even at public or judicial auction, neither in person nor by an agent:

"1. The guardian, the property of the person or persons who may be under their guardianship.

"2. Agents, the property the administration or sale of which may have been intrusted to them.

"3. Executors, the property intrusted to their care.

"4. Public officials, the property of The People of Porto Rico, municipalities, towns, and also of public institutions, the administration of which has been intrusted to them.

"This provision shall apply to judges and experts who, in any manner whatsoever, take part in the sale.

"5. Judges, members of the department of public prosecution, clerks of superior and inferior courts, and officials of justice, the property and rights in litigation before the court in the jurisdiction or territory over which their respective duties, this prohibition including the act of acquiring by assignment.

"From this rule shall be excepted the cases in which hereditary actions among coheirs are involved, or assignments in payment of debts, or security for the goods they may possess.

"The prohibition contained in this number shall include the lawyers and solicitors with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office."

It is conceded that if the acts here prohibited are merely voidable, they may be ratified or confirmed, but not otherwise. Sections 4 and 1276 to 1280 of the Civil Code. It follows from section 4 that the Legislature used the word

"void" in the sense of "void" or "voidable." That section is as follows:

"Section 4. Acts executed contrary to the provisions of law are void except when the law preserves their validity.

"Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person."

If the foregoing section 1362 be examined, it will be seen that all the acts forbidden therein are not of like character, inasmuch as some of the persons mentioned are public officials, some of them are *quasi* public officials, like guardians, executors and administrators, and some may be private persons. While all the acts are clearly forbidden the question of whether a particular act may be ratified or not depends upon its essential nature. The public policy applicable to public officials might not apply to transactions entirely private.

The State may find it expedient to say that a public official has no power or capacity to convey to himself, and from the mere fact that public officials are involved the violation of the prohibition may be a violation of public order. We are making this distinction principally because if the sale in question was capable of ratification, we do not want to be understood as deciding that any sale made despite the provisions of section 1362 may be ratified. Some of them, perhaps, may not be, but if there is any doubt about whether all the acts prohibited should be considered as insusceptible of ratification the modern tendency is to put such a construction upon a statute as favors the liberty of alienation.

The writers on Civil Law, Manresa and Martínez Ruiz, and the respondents are of the opinion that all contracts executed in violation of the provisions of section 1362, are non-existent. Is there anything in the form of the words of section 1362 whereby the inference may be drawn that the acts committed in violation thereof are non-existent? "The following

persons cannot acquire'' is the language, but language equally strong is used in sections 178, 1226, 1328, 1451, 1460 and 1617, and yet all the acts here forbidden are capable of ratification. Section 178 says that marriages in contravention of the code are null and void, but section 179 makes it evident that only certain persons can claim the nullity. In many a case children born before the nullity declared would be legitimate and property rights would vest. Under section 1328 the husband may not sell the ganancial property without the wife's consent, but a sale so made is capable of ratification. It is needless to follow up all the sections or the jurisprudence in regard to them. We think that it has been sufficiently shown here in other parts of the opinion that whether an act is susceptible of ratification cannot be determined from the mere form of the words used by the law.

Let us examine the provisions of the Civil Code which bear on the case. We shall cite the present Civil Code as in the sections referred to there is no substantial conflict between the Spanish Civil Code and our own. Section 4, as we have seen, provides that acts executed contrary to the provisions of law are void except when the law preserves their validity, and that rights granted by law may be renounced provided such renunciation is not contrary to law, to public interest, or public order, or prejudicial to the interest of a third person. Section 1228 provides that there is no contract unless the following requisites exist: 1. The consent of the contracting parties; 2. A definite object which may be the subject of the contract; 3. The cause for the obligation which may be established. Section 1267 provides that contracts containing the requisites mentioned in section 1228 may be annulled, even when there should be no ''lesion'' to the contracting parties, whenever they contain any of the defects which invalidate them according to law. Section 1277 provides that only contracts having all the requisites mentioned in section 1228 can be confirmed. Section 1242 says that contracts without consideration or with an illicit one have

no effect whatsoever, and that a consideration is illicit when it is contrary to law and good morals.

From these sections it is evident that the law makes no division of contracts into those which are void and those which are merely voidable. Section 1280 says that confirmation purges the contract of all defects which it may have contained from the moment of its execution. Hence, if a contract has all the requisites of section 1228, it may, according to 1277, be confirmed unless it partakes of one of the vices mentioned in section 1242. A contract in consideration of a crime or in consideration of an act which mankind would necessarily pronounce immoral are plain examples of such forbidden contracts. The contract before us had all the requisites of section 1228, but it was executed in violation of section 1362. But not every act mentioned in section 1362 is necessarily immoral. That fact depends mainly upon the intimate and essential nature of the particular transaction involved, and here the indication of the whole record is that Iglesias was acting with the full knowledge of Ledesma and as between them there was no immorality or lack of fair dealing. Ledesma promptly ratified the act of his agent.

We think these principles flow from a mere consideration of the Civil Code. Cases in the Supreme Court of the United States, however, throw some light on the matter. *Michoud v. Girod et al.*, 4 How., 554, was a case that arose in Louisiana, a State whose legal precedents are taken from the Civil Code of Napoleon. The court said:

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest

may withdraw him. In this conflict of interest the law wisely inter-
poses. It acts not on the possibility that, in some cases, the sense of
that duty may prevail over the motives of self-interest but it
provides against the probability in many cases, and the danger in all
cases, that the dictates of self-interest will exercise a predominant
influence, and supersede that of duty. It therefore prohibits a party
from purchasing on his own account that which his duty or trust
requires him to sell on account of another, and from purchasing on
account of another that which he sells on his own account. In effect,
he is not allowed to unite the two opposite characters of buyer and
seller, because his interests, when he is the seller or buyer on his own
account, are directly conflicting with those of the person on whose
account he buys or sells.

"And it makes no difference in the application of the rule, that a
sale was at public auction, *bona fide*, and for a fair price, and that
the executor did not purchase for himself, but that a third person,
by previous arrangement with the executor, became the purchaser,
to hold in trust for the separate use and benefit of the wife of the
executor, who was one of the *cestuis que trust*, and who had an interest
in the land under the will of the testator. The inquiry, in such case,
is not whether there was not fraud in fact. The purchase is void, and
will be set aside at the instance of the *cestui que trust* and a resale
ordered on the ground of the temptation to abuse and of the danger
of imposition inaccessible to the eye of the court."

In *Hoyt* v. *Latham*, 143 U. S., 553, the court, however,
permitted a contract partaking of a like defect to the one
at bar to be confirmed approving and explaining the case of
*Michoud* v. *Girod*, *supra*. The American authorities support
the idea of the possibility of confirming a contract like the
one executed by Iglesias and Ledesma. *Hammond* v. *Hop-
kins*, 143 U. S., 224; *Scottish-American Mortgage Co.* v.
*Clowney*, 49 S. E., 569; *U. S. Ewell* v. *Daggs*, 108, U. S., 143;
*Obert* v. *Obert*, 12 N. J., 423; *Porter* v. *Woodruff*, 36 N. J.
Eq., 174; *March* v. *Whitmore*, 21 Wall., 178; *Bell* v. *Mc-
Connell*, 41 Am. Rep., 528; *Pridgen* v. *Adkins*, 25 Tex., 388.

The rule of law exists independently of the morals of the
particular transaction, and the prohibition of section 1362

does not by reason of its essential nature fall into a different class from other rules of law to which we have alluded.

Respondents place great reliance on the opinion of Manresa and Martínez Ruiz. But it seems that each of these commentators depend upon a decision of the Supreme Court of Spain that does not bear out their theory.

In that case a complaint was filed in the court of Falset on May 19, 1890, wherein it was prayed that the deed of August 30, 1852, which was executed by Don Juan Sabaté y Bargalló, should be declared null and void, according to which said Sabaté y Bargalló re-donated—in case he should die without any legitimate or natural children—in favor of his father, Don Juan Sabaté y March, or his successors, certain property which the former had acquired from the latter. And a judgment having been rendered on appeal by the *Audiencia* of Barcelona acquitting the defendant from said complaint, an appeal was taken on the ground that the date of prescription of the action of nullity should not be reckoned from August 30, 1852, when the deed was executed, but from the time of the death of Sabaté Bargalló, which took place on December 15, 1882, inasmuch as the re-donation had been executed in case he should die without any legitimate or natural children, and inasmuch as in accordance with the *utsatge omnes causae* of the *Recognoverunt Próceres,* (a Cataluñan statute) the term set for the prescription of all actions and causes of action of any kind is 30 years, which time had not expired since the death of Sabaté Bargalló. But the Supreme Court of Spain, by its judgment of April 11, 1894, acting under the supposition of the nullity of the deed, as thus had been decided by the lower court, and without the parties having made any appearance, dismissed the appeal on the ground that "any contract executed in express violation of a provision of law will give rise to a proper relief for the purpose of restoring the *status quo,* and such being the origin and scope of said action it must necessarily arise at the very moment of the execution of said contract, it being therefore

evident that said action of nullity was properly brought against the donee, Don Juan Sabaté y March, from the date of the execution of the aforesaid deed; and, furthermore, prescription must prevail because the action was not brought until the year 1890, when the complaint was presented by the persons or heirs who derived their title from the redonor, there having elapsed more than the 30 years required for the prescription of all actions by the *utsatge omnes causae,* Title II, Book VII, Volume I of the Cataluñan Constitutions, Chapter XLIV of the *Recognoverunt Próceres;* and therefore the judgment appealed from was rendered in accordance with said constitution and no violation could have been made thereby of those precepts which together with said constitution have also been cited by the appellant.''

Thus it will be seen that the true basis of the decision of the Supreme Court of Spain was that prescription had run. Furthermore, the question of voidable *vel non* was not raised.

Manresa, Volume X, page 102, goes so far as to assert that the act forbidden by section 1362 is so utterly void that even if the principal approves, his heirs may still annul or disregard. We think the great jurisconsult was overlooking some other great principles of the Spanish civil law to the effect that *nadie puede ir contra sus propios actos ni nadie puede enriquecerse en perjuicio de otro* (or estoppel).

Section 1794 provides:

''The owner of property or a business who avails himself of the advantages of the administration of another, even when he has not expressly ratified it, shall be liable for the obligations contracted for his benefit, and he shall indemnify the administrator for the necessary and useful expenses which he may have incurred and for the losses he may have suffered in the discharge of his duties.

''The same obligation shall pertain to said owner when the object of said administration should have been to avoid any imminent or manifest damage, even when no profit results therefrom.''

The analogy is apparent. If a principal may avail himself of the acts of a volunteer he may surely avail himself of the acts of an agent and ratify acts without authority, but to the advantage of the principal.

Some stress is also laid upon the fact that only one person appeared before the notary. In the future such events may take place with greater frequency, as where one corporation is selling to another and the same men are the active officers of each corporation.

It is unnecessary to discuss the question of prescription at great length. If the act of Iglesias was susceptible of confirmation, as we think it was, no cause of action arose in Ledesma or his heirs.

Another aspect of the general question is presented by virtue of sections 411 and 413 of the Civil Code. The latter of these sections provides that the rules relating to the division of inheritances shall apply to the division among part owners, and section 1362 specifically excepts from its provisions actions between heirs. In any event the fact that the property was originally purchased by Mrs. Iglesias and held by tenancy in common with Ledesma is another circumstance in favor of the possibility of ratification. Sales between co-owners are encouraged by the law.

The judgment should be reversed.

*Reversed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice MacLeary dissented.