E. B. SCOTT v. T. W. MANN AND ANOTHER.

1. An agent to sell property cannot, through the instrumentality of his agency, purchase the property at his own sale and for his own use ; but when such an agent sells the property by public outcry, and in the manner usual at trust or judicial sales, there is no legal principle prohibiting him from bidding it off for a third party.

2. A vendor's lien can exist only as an incident to a debt, and cannot remain in one person after he has transferred to another the debt to which it is incident.

3. *Quære :* When the vendor of land, holding his vendee's note for the purchase-money, so indorses it to another as to make himself liable as an indorser, is the lien lost by reason of the additional security thus obtained by the indorsee ?

APPEAL from Dallas.    Tried below before the Hon. Hardin Hart.

The opinion details the material facts.    The former hearing of this case is reported in 33 Texas, 725.

*E. C. Bower*, for the appellant.    Appellant brought suit for the property, and nothing is heard of Waller's extraordinary defense until after the decision of this court, reversing the decision of the court below, sustaining appellees' demurrer to appellant's petition.    The pretext of unfairness in the trust sale, is given no color by the evidence.    The only fact in Waller's allegation of fraud, sustained by the evidence, is the price for which the property was sold.    This was not produced by any wrongful act of appellant, of Roy B. Scott, or their agents ; and mere inadequacy of price is no reason for annulling a sale fairly made.    The law never presumes fraud. (21 Texas, 47 ; 22 Texas, 616.)    But the wrongful act of appellee Mann in forbidding the sale, together with the business prostration then existing, doubtless prevented the property from bringing a higher price.    Scott bought, "taking the chances," as Waller did when he purchased from Mann, and if

it proved to be a good investment, he is legally and equitably entitled to the benefits resulting therefrom. It has been already decided by this court, that the facts stated in appellant's petition showed a good title and cause of action, so that the only question on the merits of the case, now before the court, is as to the rights of Waller under his long delayed "special plea," as it is called. He could have no rights against appellant, under his deed·from Mann, of January 1, 1868, because he took that deed with ·full knowledge of appellant's rights, and consequently took such title only as Mann then had. Indeed, proof of all the allegations in plaintiff's petition was so fully made at the trial below, that the plea of title in Waller was abandoned. And we have the novelty of a judgment for a demand that had been both extinguished and satisfied, and a decree for the sale of lands to satisfy the vendors' lien, which could exist by virtue of that demand alone.

In the first place then, did Waller ever hold a vendor's lien upon the land in controversy? The vendor's lien does not exist, when the legal title remains in the vendor. (Neil v. Kinney, 10 Ohio St., 67; Kaufelt v. Bowen, 7 S. & R., 64.) The nondescript instrument, given by Wigginton and wife to Mann, is only a bond for title, and if a different construction might otherwise be put upon it, the retention of the legal title in Wigginton, would result from the fact that the instrument shows upon its face that the purchase-money had not been paid, and binds them to make title only when it is paid. After the payment of the purchase-money, the right of the vendee is superior to that of the vendor, and if the vendee fails to pay the purchase-money, the vendor may sue for rescission or simply withhold the title. But after he has conveyed the legal title, his right is a mere equity, and his only remedy an equitable enforcement of the lien. Wigginton did not choose to rely upon this floating equity, as the contract for sale discloses. And this court holds, that when the evidence shows that the vendor did not mean to rely upon the lien, it does not exist. (Parker County, v. Sewell, 24 Texas, 239, and authorities there cited.)

There is no evidence that the note retained by Wigginton has been fully paid. The legal title then being in themselves, they had no vendor's lien, and could convey none to Waller. In conflict with many high authorities, it has been decided by this court, that the vendor's lien can be assigned. (Pinchain *v.* Collard, 13 Texas, 335 ; Moore *v.* Raymond, 15 Texas, 554; Murray *v.* Able, 19 Texas, 213.) But can the doctrine be carried further than that it may be assigned by the transfer of a negotiable promissory note? There is nothing in the record to show that the note in this case was negotiable, or a promissory note at all.

The tendency of modern legislation is to destroy, and of modern American decisions to circumscribe the operation of the vendor's lien. (Parker county *v.* Sewell; 1 Hilliard on Mortgages, 661 *et seq.*) Can the vendor divide and subdivide his lien *ad libitum?*

But admitting that Waller was invested with a part of the equitable lien on the property by virtue of his note or obligation, he took it subject to Scott's deed of trust. That was the prior equity. Did Scott lose his priority by the substitution of Mann and McConnell's deed of trust for Wigginton's? If this question can be answered in the negative, there is an end of this case. Let it be borne in mind, that Waller took the note with both constructive and *actual* notice of Scott's deed of trust. Mann purchased the property with notice of Scott's deed of trust, and agreed to discharge it with a part of the purchase-money. Thus we see that all the equities are in favor of Scott's claim, and if he lost his priority it was by a mere technicality. The substitution could, by no possibility, injure Waller. On the contrary, by the novation Scott's incumbrance was greatly reduced, to the manifest advantage of Waller. Even if it could be held that the agreement of January 3d discharged Wigginton from his personal liability to Scott, the extinguishment of a debt as a personal claim against the mortgagor does not affect the mortgage lien. (Tripp *v.* Vincent, 3 Barb. Ch. 614.) So the Wigginton deed of trust was by law,

and by express contract, a subsisting lien at the time the Mann and McConnell's deed of trust was given. A mortgage is a security for debt and not for any particular evidence of debt (1 Hilliard on Mortgages, 482, Note), and one mortgage may be substituted for another, without detriment to the mortgagee. (Ib. 483, note, and authorities there cited.)

If Waller had taken the claim without notice, or even without actual notice of Scott's incumbrance, there might be some equity in declaring Scott's lien postponed.

It was insisted in the court below, that Scott's deed of trust was not a lien upon the property, because not recorded within ninety days from its execution. (P. D., 4985.) But, Waller having notice of its execution, this is controlled by the later act of Article 4988.

But, whatever may have been the respective rights of appellant, and appellee Waller, before the purchase of the property in controversy by Waller, from Mann, on the 1st day of January, 1868, and whether Waller held a vendor's lien superior to Roy B. Scott's deed of trust, or not, by that transaction Waller " stepped into Mann's shoes," and has no other or better right to the property than Mann then had. (1 Story's Eq. 395 *et seq.*; Haughton *v.* Marshall, 31 Texas, 196.) With full knowledge of the trust sale and the claims of appellant, he purchased the property, agreeing, as his father-in-law expressed it, " to take the chances." When it is remembered that there was a " stay law " expressly applicable to deeds of trust then in existence (Acts 1866, p. 128, Section 6), causing Mann to forbid the sale, and that able counsel so much doubted the validity of the trust sale as to require a decision of this court upon the point, we readily conclude that the " chances " did not then seem desperate. As against Mann, appellant had the title to the property. At most Waller had but an equity, and this he surrendered as the consideration for Mann's deed. If there could be such a thing as a private or extrajudicial foreclosure or enforcement of the vendor's lien, the facts of this case clearly show that such was not the intention of these parties. No sane

man would warrant the title of property merely surrendered to the vendor for less than half its cost and present value. Such a transaction would show fraud upon its face as a conveyance made to hinder and delay other creditors. And if made for this purpose, is absolutely void as to third parties, though binding between the parties thereto and their privies. If not fraudulent for this reason, Waller can save himself by suit upon the covenants of warranty.

A vendor's lien is created by implication of law, or rather equity, when the purchase-money of land remains unpaid. (1 Hilliard on Mortgages, 694; 2 Story's Eq., 1217.) It is created by debt, and subject to all the incidents of debt. If the debt is barred by limitation, satisfied or extinguished, the lien is gone. (3 Parsons on Contracts, 279 and 280, and all the writers on this subject.) The only exception to the rule is, that this court and some others have decided that while the debt still exists, although barred by limitation, the lien remains. It is difficult to perceive the distinction, in this respect, between the vendor's lien and mortgages, where the contrary rule obtains. (Duty v. Graham, 12 Texas, 427.) The lien and the mortgage are alike chattel interests. All the authorities agree that the satisfaction or extinguishment of the debt for the purchase-money, destroys the lien. A debt may be extinguished without being satisfied, but satisfaction always operates as an extinguishment. (Story, Prom. Notes, 403; as to how a debt may be extinguished, ibid. 372, 403, 406, and 408.) Payment is both. Was not this debt paid? Without fraud, misrepresentation, or mistake, Waller gave the note to Mann, in "absolute payment" for the land, and took his warranty deed therefor. A payment may be made in anything the creditor may choose to accept as such, and need not be in money. Could he, on the failure of the title to the land, have sued Mann upon the note? If not, he has no claim against any one else upon the same demand. (Ib. 372.) A lien lost or extinguished, is as though it had never existed. (20 Ala. 662.) The cancellation of a bond, or the delivery thereof to the obligor for that pur-

pose, in the absence of fraud or mistake, extinguishes the debt. (7 Barr, 251.) A vendor claiming a lien on land for a part of the purchase-money, and purchasing the same land, sold on execution, thereby extinguishes the debt and lien. (Murphy *v.* Elliott, 6 Blackford, 482.) This goes further than the principle contended for by appellant. The taking possession of the mortgaged premises by the mortgagee under a decree of foreclosure extinguishes the debt. (Derby Bank *v.* Landon, 3 Conn., 62.) 'These cases seem conclusive. It is not perceived that the voluntary act of the parties could place Waller in a better position than if he had purchased at execution sale, as in the case in Blackford just cited; see also, to the same effect, 19 Pickering 273; Daton *v.* Russell, 17 Conn., 146; Cook *v.* Love, 33 Texas. The vendor's lien is sometimes loosely called an estate, 1 Hilliard on Mortgages, 675 (11), and Courts of Chancery have sometimes held legal and equitable estates, united in the same person, not merged when it is to the interest of such person to keep them separate. But no merger is insisted on, in this case. There was none and could have been none. If Waller held the vendor's lien, it did not unite with the legal estate. On the contrary, the legal estate owes its existence to the destruction of the vendor's lien. The title acquired by Mann from Wigginton is called the legal estate, because it was such as against the other parties to this suit prior to the trust sale.

*J. J. Good*, for the appellee, filed an able brief, directed in the main to the facts of the case. He insisted that Record, the agent of Roy B. Scott, to sell, could not, as agent of E. B. Scott, the appellant, bid off the property sold by himself under his agency to sell; and cited the following cases:—Shannon *v.* Meredith, 14 Texas, 217; Pridgen *v.* Alford, 25 Texas, 388; Sayles's Treatise, Section 172; Michaud *v.* Girod, 4 How. U. S., 503; 30 Barb., 553; 2 Cases, 183; Story's Agency, Section 211, and Notes; Story's Eq. Jur., Section 322 *et seq.;* and 1 Parsons on Contracts, 86. The counsel maintained that authori-

ties to the contrary are based upon statutes, or have been over-ruled or doubted.

WALKER, J.   A branch of this case was before us at the last term of the court, and it would appear that from some cause or other, we fell into some confusion as to the position of the parties.   But the mistake was immaterial, and the question presented was properly decided, whether it was the real question in the case or not.   For, had we understood the case then as it is now presented, our judgment would have been the same, though other reasons, apparent in themselves, would doubtless have been given for the opinion.

The case as now before us appears to stand thus:—On the 25th day of August, 1865, F. M. Wigginton, being indebted to Roy B. Scott in the sum of two thousand seven hundred and thirty dollars and seventy cents, executed, to secure the payment, a deed of trust (in which his wife joined) to Roy B. Scott, over the property in controversy.   The trust deed was recorded on the 9th day of October following.

On the 27th of December of the same year, Wigginton and wife sold the property to the appellee, Mann, taking in payment two promissory notes of four thousand dollars each.   One of these notes was afterwards transferred by Wigginton to Waller, the co-appellee of Mann; and it is insisted that Waller had both actual and constructive notice of the incumbrance of the property to Scott.   Waller took the note from Wigginton in satisfaction of a debt.

On the 3d day of January, 1866, by an arrangement between Wigginton, Mann, and E. B. Scott, the latter acting as the agent or attorney of Roy B. Scott, it was agreed that Mann should become paymaster to Scott of his debt—Wigginton giving Mann credit for the amount, on one of the four thousand dollar notes.   After this arrangement, J. G. and J. J. McConnell became interested with Mann in the property, and there is some evidence to show that Waller was also a partner in the firm of McConnell, Mann & Co.   This firm paid one-half or more of the

debt due to Scott. On the 3d day of July, 1866, they executed their promissory notes for the remainder, and secured them by a deed of trust over the same property. This deed of trust was accepted by Scott, as a substitute for his first deed from Wigginton and wife, if the action of G. W. Guess, Scott's attorney, can be regarded as binding in the premises; but it is perhaps unnecessary to decide this question.

On the 3d day of September, 1867, Record, Scott's attorney, sold the property under the deed of trust from Mann and McConnell; and it appears that he bid off the property for E. B. Scott, at the sum of one thousand dollars, which paid the balance due at the time to Roy B. Scott, and a deed was made to appellant.

It is not complained that the agent has been guilty of any fraud toward his principal or any other person; hence the authorities referred to in the appellee's brief have no application to this case whatever. Record did not buy for himself. In the case of Shannon v. Marmaduke, 14 Texas, 217, the court say that the rule is well settled—that an agent to sell for another cannot himself become a purchaser. But this principle, says Judge Wheeler, "like most others, may be subject to some " qualification in its application to particular cases." And this same rule is laid down perhaps more clearly by Justice Bell, in Pridgen v. Adkins, 25 Texas, 388. The learned judge says: " The general principle that an agent to sell cannot buy for " himself, must be understood to mean that an agent, author- " ized to sell the property of his principal, cannot become the " purchaser of it through the instrumentality of his agency, " either directly or indirectly."

This is certainly very sound law, for the agent cannot deal with himself, both as buyer and seller. But we know of no principle of law which would exclude the agent of A from buying in the property for B, if sold at public outcry in market overt, or in the manner in which sales are usually made by ministerial officers. Here Record was the agent of Roy B. Scott, and as such he sold the property to E. B. Scott, or accepted his bid for it.

It appears that at the time of the sale, the McConnells had parted with their interest in the property, and Mann and Waller were in possession, carrying on the milling business. Waller is the son-in-law of Mann, and, during a part of the time these transactions were going on, he lived in the house with his father-in-law, and it is claimed, as we think with very good reason, had full knowledge of the trust sale. On the 1st day of January, 1868, Waller purchased the property from Mann, giving the note which he had received from Wigginton, in full payment, and took a warranty deed for the same; and it is in evidence that Mann, on receiving the note, tore off his signature, and put it away with his private papers. This was the note he had given to Wigginton.

The case heretofore decided by this court was an action brought by the appellant to recover possession of the property, wherein a demurrer had been filed to the petition. The demurrer had been sustained by the District Court, and we reversed the judgment and remanded the case. And now, it seems that Waller would have us revoke our former decision; but, in addition to the claim of unfairness in the sale of the property to Scott, he claims that the property was bound by vendor's lien, for the note he received from Wigginton and sold to Mann; and upon the trial of the cause, the jury found that there was due to Waller the sum of six thousand three hundred and twenty-two dollars and twenty-two cents. And without any finding of the jury as to the vendor's lien, the court entered a judgment canceling, annulling, and setting aside the deed from Mann to Waller, and that Waller recover from Mann the sum stated in the verdict, which was the amount of the four thousand dollar note Waller had received from Wigginton, with the interest thereon; and further, that Waller have his vendor's lien for the full amount of the judgment, upon the land which is described in the judgment. And the property is ordered to be sold, and if any surplus remains of the proceeds of sale, after satisfying Waller's judgment, it is to be paid to E. B. Scott; that Waller shall recover from Scott and Mann his costs, and that Scott shall re-

cover·from Mann his costs, and execution issue in favor of the officers of the court against each party respectively, for all the costs expended in the suit.

This is a most extraordinary judgment, and is erroneous in every essential particular. Waller had no right whatever to a judgment for one cent on the four thousand dollar note, having parted with it to Mann; nor had he any vendor's lien upon the property. The lien could only have been an incident to the note, if, indeed, the doubtful point be conceded, that the vendor's lien still followed the note after its indorsement by Wigginton to Waller. Authorities of ' the highest respectability maintain that a vendor's lien is lost when additional or other securities are taken; and when a note passes by indorsement, the indorsee does acquire another security in the liability of the indorser.

But Waller had parted with all his right and title in the note to Mann, and evidently Mann regarded the note as canceled. Then Mann was the owner of the note. The note could not be owned by Mann, and at the same time a vendor's lien remain in Waller; for if such were the law, no lien would ·ever have passed to Waller on the indorsement of the note by Wigginton; but would have remained in the indorser. This, in our view of the law, is simply absurd.

But to dispose of· this case, let us see whether Mann could have enforced the payment of the note under a vendor's lien, as against the purchaser of the property under his own trust deed to Scott. This proposition needs no discussion; and the only remaining feature in this case necessary to be noticed is, Was the sale to E. B. Scott vitiated by gross inadequacy of consideration?

It is doubtless true that the property did not sell for near its value, and a very sufficient reason appears why it did not. Mann appeared on the day of sale, and gave public notice that he would dispute the title, and warned all persons against bidding on the property, and thus probably prevented it from bringing more than it actually sold for. And for this circumstance the appellant is in no way responsible.

The judgment of the District Court is reversed, and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.