HAGELSTEIN et al. v. CAMPBELL.
(No. 6165.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 19, 1919. Rehearing Denied March 12, 1919.)

1. BROKERS ⟨⟩34—REALTY BROKERS—CONTRACT FOR DIVISION OF LEASE MONEY—VALIDITY.

Contract, between owner of land and agents to sell, for division of lease money received from certain pasture lands, held valid and binding; there having been no fraud on the agents' part.

2. VENDOR AND PURCHASER ⟨⟩196—RIGHTS OF PURCHASERS—RIGHT TO RENTS.

Contract of sale of ranch to agents who had contracted to sell other lands of owner held not to entitle them to rents from ranch until, under contract, they had demanded a deed from the owner and complied with the contract.

3. VENDOR AND PURCHASER ⟨⟩196—LIABILITIES OF PURCHASERS—LIABILITY FOR RENTS.

Agents, who contracted with owner of land to sell it, and, as to a particular tract, to sell it

or to purchase themselves, *held* liable for any rent money collected by them on land which they agreed to sell or to purchase while it belonged to owner, but not rent collected after it was sold by owner to other parties, who were entitled to rents.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Jordan Campbell against G. & H. Hagelstein. From judgment for plaintiff, defendants appeal. Reversed, judgment rendered in part for plaintiff, and cause remanded for trial in consonance with the opinion.

Templeton, Brooks, Napier & Ogden, of San Antonio, for appellants.

Clamp, Searcy & Clamp, of San Antonio, for appellee.

FLY, C. J. Appellee sued on a contract between him and appellants, which, among other things, provided for the sale of certain lands, praying for a construction of the contract and, in the event it be held that appellants were entitled to the use of what is called the "lower pasture" from and after August 1, 1914, that appellee recover of them the taxes due on same in 1915 and 1916; but if it be held that appellee was entitled to the use of said "lower pasture" after August 1, 1914, then that appellee recover of appellants the sum of $5,659.82 for the rental value of the lower pasture from August 1, 1914, to March 20, 1917, and taxes for 1916, and also recover $1,512.50, rent money collected on the "upper pasture" and retained by appellants. The cause was tried without a jury, and judgment rendered setting aside an agreement between appellants and appellee whereby the rent of the upper pasture should be divided equally between them, and that for rent of such pasture appellee recover $2,575, less the sum of $1,287.50 paid and tendered by appellants, the balance being $1,287.50, and that appellee recover $1,291.50 rent on the lower pasture, the whole amount recovered, with the $225 tendered into court by appellants, amounting to $2,804.

In the sales contract between appellants and appellee, which became effective on March 20, 1914, appellee placed in the hands of appellants 9,000 or 10,000 acres or land in Atascosa county, to be sold by them within 3 years from March 20, 1914, it being provided that 1,000 acres should be sold in the first 6 months for the net sum to appellee of $20 an acre, 1,000 acres to be sold in the second 6 months for a sum that would net appellee $21 an acre, and so on until for the fifth 6 months the net sum for appellee should be $25 an acre; it being provided that appellants were compelled to take the 3,899.6 acres remaining after the sales provided for. It was also provided that, if appellants failed to sell the requisite number of acres within

the required time, appellee could cancel and annul the contract. A lease of the 9,000 acres did not expire until August 1, 1914, and it was provided that the contract should not interfere with the lease. Appellee testified that he desired to lease the lower pasture, and appellants claimed to own it under the contract, and that he asked them about the upper pasture, and whether they were claiming that, and they said not. He did not attempt to lease the lower pasture, and they stocked it with cattle. The contract gave appellee the right to use all the land not sold and fenced by the purchaser. Appellee informed appellants that he intended to hold them liable for rent of the lower pasture. Appellee testified that he told appellants that he intended to rent the upper pasture. In that pasture the water supply was limited, and appellants told appellee that it was all sold; that they had sold the two tracts which had the water supply, and appellee could not lease it, because under the contract the vendees could fence off all the water. Appellants said that they could control the water supply if they were given one-half the lease money, and believing that the water supply had been sold, appellee agreed to their proposition. The land had not been sold, although tract 27, on which was the chief water supply, was under contract of sale at the time. Appellee was not sure whether he was told that the water supply land was contracted for sale or had been sold. The land could not have been sold without appellee executing deeds to it. Appellee stated, on cross-examination, that the Hagelstein to whom he talked told him that he had sold the water supply, and not that he had sold any particular tract. The Hagelsteins had the right under the contract to sell any and all of the tracts of land described therein. Appellee knew the land had not been sold because he had not executed a deed to it. There was a lease on the 9,000 acres when the contract was made, which did not expire until August, 1914. The land, tract 27, was under contract of sale to a man named Zaywatski, when appellants told appellee that it was, and the contract was not declared forfeited until the fall of 1915.

[1] There was absolutely no testimony tending to show fraud upon the part of appellants, and the contract for a division of the lease money received from the upper pasture was valid and binding. It was not alleged that fraud had been used in failing to inform appellee that Zaywatski had defaulted in his contract of purchase, and consequently that could not be considered as evidencing fraud. Appellants tendered into court the amount of $225 as a balance due by them on the rent of the upper pasture. The court allowed, not only that sum, but in addition $1,062.50 as rent for the upper pasture.

The only clause in the contract between appellants and appellee under which appellee could claim the right to lease the land that

had not been sold was paragraph 8, which provided:

"When any of said property is sold, purchaser shall fence the same off from adjoining land and the failure to fence the land, that he purchased, will not prevent the said first party from the use of the land that is unfenced and no ground for damages shall be had by them for the use of the land purchased; if they desire the absolute use of the land they purchase they will be required to fence it off."

Appellants recognized the right of appellee to lease the upper, but not the lower, pasture. There had been, according to the testimony of appellants, a verbal agreement between the parties that no cattle were to be pastured on either tract.

[2] Under the provisions of the third and fourth paragraphs of the contract the 3,899.6-acre tract was contracted or sold to appellants whether they failed to sell the other land or not. In the third paragraph it is provided:

"This 3,899.6 acres or the unsold portion thereof they are obligated to take, regardless of whether this contract shall be abrogated and annulled before the expiration of said 36 months."

The fourth paragraph provides for the cancellation of the contract in case of failure to sell the requisite number of acres of land within the specified time, "but notwithstanding which the parties of the second part bind and obligate themselves to take and pay for, under the terms of this contract, the said 3,-899.6 acres, or the unsold portions thereof." The price was fixed at the excess price for one half of the land, that is, $25; the other half presumably to be paid for at the rate of $20 an acre. The contract recites that the 3,899.6 acres was fenced to itself. Appellants were compelled by the contract to take the Natascosa or lower ranch themselves, or to sell it, which was equivalent to a contract of sale to them at a certain price, which they could pay at any time at or before the expiration of 36 months.

[3] We are of the opinion that the contract of sale of the "lower pasture" to appellants did not entitle them to the rents arising from the same until they had, under the terms of the contract, demanded a deed from appellee and complied with its terms. They could have made that demand on March 20, 1914, when the contract was executed or at any time thereafter during the existence of the contract and required the execution of the deed upon their performance of the terms of the contract. They are therefore by plain implication from the terms of paragraph 8 of the contract, liable for any rent money collected by them on the land while it belonged to appellee, but not rent of the land after being sold to other parties. It was claimed by appellants that as they were bound to take the lower pasture, if not sold to others by them, that appellee agreed that the dollar for each 6 months, added to the cost of each acre of land, should recompense him for all interest, taxes, and other incidental expenses. This was testified to by the appellants and by Caldwell Palmer, a former agent of appellee; but the latter denied this. Appellee sought to recover the reasonable rental value of the use and possession of the lower pasture, and the court seemed to hold that to be identical with "all rents they have collected on all the property in the Natascosa or lower pasture, aggregating twelve hundred ninety-one $1,-291.50) dollars and fifty cents." The amount collected in lease money by appellants might and might not be the same as "the reasonable rental value of the use and possession" of the lower pasture. The testimony fails to show that they were the same; but if they were the judgment cannot be justified, because the evidence showed that sales of portions of the land were being made from year to year, and it is clear that appellants should not be compelled to pay rent to appellee on land with the title of which he had parted. The facts are that, in 1914, 261 acres of the land were sold, about 81 acres of it to appellants; that, in 1915, 594 acres were sold; in 1916, 1,565.35 acres were sold; and 1,486.50 were sold in 1917. In the face of all those sales appellants were forced to answer to appellee for rent on every acre of the 3,899.6 acres in the lower pasture. Stretching the right to use the lands of purchasers of parts of the main tract as far as reason and common sense would permit, it could never, with justice, be held to entitle appellee to obtain rent money for another man's land. The use referred to in clause 8 of the contract could only have meant the right to allow the cattle of appellee, or of his lessee, it may be, to graze on the unfenced lands of another in his pasture. If appellee should be entitled to the rent arising from his own land, he has obtained all that in justice and equity belongs to him. If appellants collected rent from the lands sold by them, the purchasers of the land, if any, and not appellee, are entitled to such rent money.

The judgment of the lower court is reversed, and, as to what is known as the upper pasture, judgment is rendered in favor of appellee for the $225 tendered by appellants into court, that as to the lower pasture the cause is remanded, to be tried in consonance with this opinion, and that appellants recover all costs in this behalf expended in this and the lower court.