## LEE v. W. D. HAYDEN CO.
### No. 7676.

Court of Civil Appeals of Texas. Austin.
March 9, 1932.

Rehearing Denied March 30, 1932.

 

C. G. Krueger, of Bellville, and Fred L. Blundell, of Lockhart, for appellant.

W. P. Hamblen, of Houston, McDonald & Wayman, of Galveston, and C. D. Krause, of Lagrange, for appellee.

BLAIR, J.

Primarily this appeal involves the question of whether the trial court erred in instructing a verdict for appellee at the conclusion of the testimony. We think the action was error, because the testimony is conflicting on some of the issues raised by the pleadings, and is of such nature that reasonable minds might draw different conclusions as to the weight to be given it, and as to the credibility of the witnesses, giving the testimony.

Appellee, W. D. Hayden Company, sued appellant, W. E. Lee, in trespass to try title to recover 57 acres of land in Fayette county, Tex., and also to recover $1,250, and in substance alleged and offered proof tending to show that prior to and after May 10 and June 15, 1929, appellant was employed by appellee to manage the operation of its gravel plants in Fayette county, and to attend to all matters in connection therewith, including the purchase of property containing gravel deposits, and in negotiating for gravel leases on lands in the neighborhood of its plants, and for which services he was regularly paid a monthly salary of $300. That shortly prior to May 10, 1929, appellant, while so engaged as appellee's agent or representative, represented to appellee that he had an opportunity to purchase 43 acres of land then under lease to appellee for mining gravel, for the price of $25,000, which was the best price for which he could obtain the property; and that by purchasing the property appellee would be relieved of paying royalties for the gravel mined. That relying upon these representations, appellee agreed to purchase the 43 acres, and about May 10, 1929, gave appellant a cashier's check for $500, to deposit as earnest money for the purchase of the 43 acres, and on or about June 14, 1929, paid the remaining $24,500, with instructions to appellant to convey the 43 acres to the Public National Bank, Houston, Tex., for appellee's convenience in making the purchase. That appellee made the purchase of the 43 acres without knowledge or notice that appellant had, in disobedience of his contract of employment, and in fraud of its right and without its knowledge or consent, actually agreed with vendors of the 43 acres to also purchase the 57 acres in suit for the $25,000, or that appellant had in addition obtained $1,250 as a commission from vendors for making the sale, and that therefore its trusted agent obtained the 57 acres of land and the $1,250 in fraud of appellee's right thereto, and held same as trustee for it.

Appellant answered, alleging that about May 15, 1929, he obtained a 30-day written contract or option to purchase 100 acres of land from vendors, which included the 43 acres, for the price of $25,000, less 5 per cent if the purchase price was paid in cash. That appellant then sold and conveyed the 43 acres by warranty deed to the Public National Bank, Houston, Tex., for $25,000 in cash; the deed being dated June 13, 1929. That purchaser knew the land it was purchasing and furnished the field notes to the 43 acres, particularly describing it; that appellant forwarded the said bank a copy of his option contract to purchase the 100 acres, a copy of the deed to the 100 acres from vendors to himself, and a copy of his deed to the bank conveying the 43 acres of the 100 acres, the original of all these papers being in the hands of a bank at Lagrange, in escrow. That the vendee, Public National Bank, Houston, Tex., therefore had full knowledge of all facts when it purchased and paid for the 43 acres; and that, if said bank was acting as agent and trustee for appellee, appellee was charged with notice of these facts, and also had knowledge and notice of all the above facts at the time it agreed to and did purchase the 43 acres. That appellant was not employed by appellee to obtain the option contract to purchase the 100 acres, but was acting for himself, which fact was well known to appellee at the time; and that appellee's claim and suit were an afterthought, conceived for the purpose of depriving him of the 57 acres and his profits on the purchase and sale of the 43 acres. That appellant was only employed by appellee to manage the labor and the operation of its gravel plants; that he was not employed to look for or discover gravel pits or to purchase leases; and that he was employed with the distinct understanding that he might carry on his own private business while performing his duties of managing the operation of appellee's gravel plants for extracting gravel from its leases.

The testimony adduced required the submission of two of these defenses to the jury: First, that appellant was acting for and on behalf of himself in obtaining the option contract and in the purchase of the 100 acres of land, and not as agent for appellee; second, that if appellant acted as agent for appellee in purchasing the 43 acres, appellee had actual and constructive notice and knowledge of the fact that appellant had purchased the 100 acres, instead of only 43 acres, before it paid the purchase price and obtained the deed to the 43 acres, and acquiesced therein, and brought this suit as an afterthought to deprive appellant of the 57 acres of land in suit and of the profits for which he sold the 43 acres.

In substance, appellant testified that prior to and at the time of his employment with appellee, beginning in February, 1929, he was engaged in making tests of lands for gravel, and in taking and selling leases for gravel mining to those interested, and in hauling gravel and laying oil pipe lines with some teams which he owned. That he was employed by appellee for the sole purpose of managing the labor and the operation of appellee's gravel plants for extracting gravel from its leases, and with specific understanding that he might give some of his time to his own businesses; and appellant and others testified that he did give a part of his time to his private businesses of hauling gravel and laying oil pipe lines with his teams. Appellant also testified that he was discharged by appellee about December 17, 1929, because of the complaint that he was giving too much of his time to his own affairs. Appellee's testimony tended to show that its employment required all of appellant's time, and that he was discharged because it discovered only a few days previously that he had practiced the alleged fraud upon it, in the purchase of the 43 acres of land. The option contract for the 100 acres of land was obtained by appellant after he told appellee he had an opportunity to get the 43 acres for $25,000. This contract, and a deed to appellant from vendors to the 100 acres, and a deed from appellant to appellee to the 43 acres were placed in escrow in a Lagrange bank to await examination of title by appellee's attorney at Lagrange, and later by its attorney at Houston. Copies of these deeds were called for by the Houston attorney, and were sent by one of appellee's employees and delivered to another employee at appellee's office in Houston. This employee was called to St. Louis, Mo., on account of the death of a relative, but wired another employee of appellee at Houston that "copy of deed to Moore property in left hand side of my desk please give to Mr. Hamblen." Mr. Hamblen was appellee's attorney handling the title at Houston; and Moore and wife were grantors of the 100 acres to appellant. The sender of the telegram testified that he never saw the deed at any time, and did not know how he obtained the information in the wire. These papers were then delivered to Mr. Hamblen, and, concerning them, he testified as follows: "The first knowledge I had that title had come from Mrs. Moore and husband to Lee was when I received a receipt from the First National Bank of LaGrange for two deeds, one a deed from Mrs. Moore and husband to W. E. Lee, and another from W. E. Lee to the Public National Bank of Houston. At that time I called Mr. Wansley over the telephone and told him the abstract showed title in Mrs. Moore, and that I had received receipt for the two deeds, one from Lee to the Bank, and he said: 'That is all right, Lee is our man at West Point, and if the title is all right in Mrs. Moore, instruct the bank to pay the money'."

After the deal was consummated, all the above papers, including the telegram, were sent by appellee's agents to the escrow bank at Lagrange, and were by it turned over to appellant, and introduced by him on the trial of this case. Appellant's deed to appellee, conveying the 43 acres, contained a general warranty of title, which fact appellant insists was pertinent to the issue of whether he was acting as agent, upon the reasoning that if he was merely acting as agent he would not have warranted the title to the land in which he had no interest.

The evidence showed that the 57 acres in suit was not valuable as gravel land, but only as farm land. There was no dispute or contention that the 43 acres was not worth the $25,000 paid for it; and that as to its value as gravel land appellee was fully informed.

Other evidence corroborative of some of the above facts and transactions was introduced in evidence, but we do not deem it necessary to discuss same.

Manifestly, if appellant did not act as agent for appellee in obtaining the option contract and in purchasing the 100 acres, appellee cannot complain because it only got 43 acres, since that was all it purchased or intended to purchase at a price agreed upon by it.

It is also settled that while the law does not approve of an agent becoming interested in a transaction which he is handling for his principal without the principal's consent, still a transaction of that kind may be valid if the agent shows that his principal, having full knowledge of all material facts, agreed to or acquiesced in it. Scott v. Mann, 36 Tex. 157; Hagelstein v. Campbell (Tex. Civ. App.) 209 S. W. 461; Amber Petroleum Co. v. Breech (Tex. Civ. App.) 111 S. W. 668. And especially is this the rule where it is doubtful whether there existed the contractual relation of agency by mutual agreement of the parties. In the instant case, the evidence is undisputed that this was the first outright purchase of the fee to land ap-

pellee had ever made; it having theretofore only purchased leases for mining gravel. Therefore the question of whether appellant could have acted as its agent to purchase the land under his general employment was doubtful, and he could have acted only upon some special agency agreement to purchase the land for appellee, which he specifically denied, and testified that he sold the land to appellee.

Appellant further contends that the court erred in employing its equitable powers to aid a party in enforcing the performance of an ultra vires act or contract. This contention is based upon the fact that appellee was incorporated as a steamship transportation company, and upon the provisions of article 1359, R. S. 1925, which inhibit a corporation from purchasing land, except such as is necessary to its business. The contention is not sustained. Appellee's charter authorized it "to buy, lease, receive, own, hold, and enjoy real and personal property necessary to the transacting of its business."

Appellee's officers testified that the 57 acres of land sued for was needed for the successful operation of its business.

It is also settled law that a corporation which has purchased lands, even for a purpose other than permitted by its charter or law, acquires title which is good and binding as to all the world except the state, and the state alone can question its title upon the ground of ultra vires. Schwab Clothing Co. v. Claunch (Tex. Civ. App.) 29 S. W. 922; Ray v. Foster (Tex. Civ. App.) 53 S. W. 54; Knowles v. Northern Texas Traction Co. (Tex. Civ. App.) 121 S. W. 232; Atlas Petroleum Corporation v. Galveston H. & S. A. R. Co. (Tex. Civ. App.) 5 S.W.(2d) 215. If appellee should obtain a verdict and judgment for the 57 acres upon its trust or fraud theory pleaded, appellant has no authority to urge the fact that, in acquiring the land, appellee may have exceeded its corporate or lawful powers.

The judgment of the trial court will be reversed, and the cause remanded.

Reversed and remanded.